(55 App. Div. 134.)

## TOWN OF SARANAC v. GROTON BRIDGE & MFG. CO.

(Supreme Court, Appellate Division, Third Department.   November 16, 1900.)

1. BRIDGES—REBUILDING—CONSENT OF TOWN BOARD.

Under Highway Law, § 10, as amended by Laws 1895, c. 606, authorizing a commissioner of highways, "with the consent of the town board," to rebuild a bridge destroyed by the elements, a consent, on condition that he build of certain material and in a certain way, if good at all, does not allow him to build of other material and in another way.

2. SAME—EFFECT OF CONSENT.

A town board passed a resolution that it consented to the highway commissioner's rebuilding a bridge, provided he could do it by subscriptions for the labor, except one skilled man, and out of material owned by the town, except the iron needed, which he was to furnish.   Later, after 180 days' labor had been promised, it passed another resolution of consent that he build the bridge, provided the same contributions can be secured as have heretofore been offered.   *Held*, that the second resolution was a reiteration of the first, modifying it no more than to authorize the commissioner to proceed, though the 180-days labor subscribed was not enough, but not authorizing construction of an iron bridge, the materials which the town had being for a wooden bridge.

3. SAME—NOTICE TO CONTRACTOR.

One who contracts with a highway commissioner to construct a bridge is put on inquiry by the condition in the consent of the town board to construction, "provided the same contributions can be secured as has heretofore been offered."

4. APPEAL—OBJECTION NOT MADE BELOW.

Objection that action for injunction will not lie, plaintiff having an adequate remedy at law, cannot be raised for the first time on appeal.

Appeal from trial term, Clinton county.

Action by the town of Saranac against the Groton Bridge & Manufacturing Company.   From judgment dismissing the complaint, plaintiff appeals.   Reversed.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, MERWIN, and SMITH, JJ.

Thomas F. Conway, for appellant.
E. A. Denton, for respondent.

PARKER, P. J.   The floods in the spring of 1898 had carried away a bridge in the town of Saranac, but left the abutments and some part of the old structure standing.   In August, 1899, the defendant commenced to tear out the abutments, and remove what was left of such bridge, and, although forbidden by the town, persisted in doing so.   Thereupon this action was commenced to perpetually enjoin them from in any manner interfering with such bridge and its approaches.   On the trial at special term the complaint was dismissed, and from the judgment entered thereon this appeal is taken.   The defendant's position is that on January 24, 1899, it entered into a contract with the commissioner of highways of the town to replace such old bridge by an iron one, for the contract price of $4,000, and that it was acting under this contract when performing the acts now sought to be enjoined.   To this claim the town makes two answers: First.   No such consent as is required by statute was ever given to the highway commissioner by the town board to rebuild this bridge,

and hence he acted without authority, and the contract referred to was and is invalid.   Second.   Under such contract, the defendant was to have the bridge completed and ready for use by the 1st day of July, 1899.   In April, 1899, and as soon as the town board learned that such contract was made, it passed a resolution repudiating it, and instructed the supervisor of the town to take measures to have it repudiated.   That they then employed counsel, and notified the defendant that the town board and town authorities repudiated and disaffirmed such contract, and at the same time directed the defendant that it must not build the bridge, nor look to the town for payment thereof; also that, at the time when so notified, the defendant had not commenced any work upon the bridge.

With reference to the first answer above stated, the circumstances seem to be substantially as follows:   Considerable objection arose to rebuilding the bridge at all, it being upon a road and in a locality not much used by the general public.   But on April 26, 1898, the town board passed a resolution substantially to the effect that it consented to the commissioner's rebuilding, provided he could do it by subscriptions for the labor, except one skilled man, and out of material owned by the town, except the iron needed, which he was to furnish.   Thereupon the commissioner obtained subscriptions amounting to about 180 days' labor, to be paid in labor and team work; and it also seems that a considerable amount of material for a wooden bridge was on hand, belonging to the town.   After the subscriptions were obtained, a list of them was filed with the town board.   Subsequently, on August 10th, a resolution was passed by the board, which reads as follows:   "Resolved, that we, as a town board, hereby consent that the commissioner of highways build the bridge known as the Wilcox bridge at Redford, provided that the same contributions can be secured as has heretofore been offered."   After the passage of these resolutions, and in the following January, the contract under which the defendant justifies was executed.   No other consent that the commissioner should rebuild was ever given by the town board, and the question is presented whether the one so given is sufficient.

Section 10 of the highway law, as amended by chapter 606 of the Laws of 1895, authorized a commissioner of highways, "with the consent of the town board," to rebuild a bridge that has been destroyed by the elements.   Without such consent, he has no authority whatever to contract for the town or incur indebtedness for such a purpose; with it, he may contract for its rebuilding, and the contract is to be deemed the contract of the town, and should be made in the name of the town.   See section 182, Town Law.   It is held in People v. Town Board of Campbell, 92 Hun, 585, 36 N. Y. Supp. 1062, that, when once a town board has given its consent, its duties, so far as the construction of the bridge is concerned, are at an end.   It cannot direct the commissioner as to what kind of a bridge it shall be, or how or by whom it shall be built.   Can it be said, then, that a consent, upon condition that he rebuild with a specified kind of bridge, and in a particular way, is such a consent as the statute contemplates?   It would seem that, if the statute intended to leave to the judgment of the commissioner entirely the kind of a bridge and the manner of

rebuilding, nothing short of an unconditional consent to go on and rebuild would constitute the permission which the commissioner is required to obtain. And without he had obtained such a consent he would have no authority to contract for any bridge at all. But certainly, if the consent of the board was on condition that he rebuild a certain kind of bridge in a certain specified way and with specified material, he could not claim that he had obtained their consent to rebuild in any other way. He could not, under such a consent, disregard the condition, and contract for such a bridge as he might deem best. In this case I am of the opinion that the consent given to the commissioner did not authorize him to rebuild with such a bridge as he contracted for.

Two resolutions were passed by the town board concerning the rebuilding of this bridge. The first one, of April 26th, clearly specifies the kind of bridge to be built and the manner of its construction. It is to be constructed of material then owned by the town, evidently of wood, and by labor subscribed by the citizens who needed the bridge. Evidently the design was to utilize the old approaches and abutments, and build a cheap bridge, that would impose but a slight burden on the town. After obtaining a certain amount of subscriptions for labor, the commissioner seems to have again applied to the board for its consent. He was present on August 10th, when the second resolution was passed. And conceding that the one recorded in the book of its records, and above quoted, is the exact one that was then passed, I think it very clear that it must be read in connection with the prior resolution, and that the consent which was then intended by the board to be given, and which was then understood by the commissioner, must be ascertained from the language used in both. There is nothing in the language of the last resolution which is in conflict with the consent given in the first, nothing which revokes the consent there given, or which substantially enlarges it. The board, having in mind its first resolution, and the further fact that the commissioner, acting under it, had procured subscriptions for 180 days of labor, reiterated the consent given, upon the further condition, however, that the contributions which had been already "offered" could be "secured." Even then the board did not intend to consent that the commissioner might rely on promises merely, and ultimately call upon the town to pay for the labor incurred.

The circumstances under which the matter came before the board, and the language of its last resolution, repel the idea that it intended to abandon the limitation which it had put upon its consent, and give the commissioner unlimited authority as to the kind of bridge he might build and the expense he might incur. The very most that can be claimed as a modification of its former consent is that, if the subscriptions already obtained should not prove sufficient in amount to complete the labor on the bridge for which they were intended, he nevertheless might proceed to build it, provided he could secure their full performance. But there is no evidence to show that they were not ample to rebuild the bridge, and hence no reason to infer that the board intended to enlarge in any respect its consent already given. The construction that the commissioner, in the following

January, puts upon this resolution, viz. that it authorized him to build such a bridge as he desired, at an expense of $4,000, provided only that by the terms of the contract the 180 days in labor could be applied in payment thereof, is utterly inconsistent with the phrase of such resolution. How, by such a provision in his contract, does he "secure" the contributions already "offered"? And the case is barren of any proof that he had in any other manner secured such contributions. A subscription to work upon a bridge such as was contemplated by the resolution of April 26th was quite a different thing from working upon a bridge requiring skilled labor and that was to impose a debt of $4,000 upon the town.

And, more than all, the contract provides that the $4,000 shall be paid in cash, or town certificates due February 1, 1900, and the indorsement on the contract that "the subscriptions of labor subscribed heretofore will be used in hauling and erecting work" is by no means an agreement to credit it upon the $4,000. Therefore in no sense has the commissioner performed the condition upon which the consent was granted. The subscriptions offered have never been "secured."

It is said that the defendant had the right to rely upon the resolution of August 10th as it read, and to act upon the consent there given. But that resolution contains on its face a condition of which it was obliged to take notice. It was thereby put upon inquiry to ascertain the extent and meaning of that proviso, and a slight examination of the records before it would have disclosed the resolution of April 26th, and the whole matter would have been exposed. No claim or explanation which the commissioner made tending to extend the authority actually given him was binding upon the town, and the defendant had no right to rely upon them. 1 Am. & Eng. Enc. Law (2d Ed.) pp. 987, 988; Board v. Ellis, 59 N. Y. 622. I conclude that the commissioner acted without the consent of the town board in making the contract in question, and that, therefore, it was not obligatory upon the town. It furnished no justification to the defendant in interfering with the plaintiff's property. This view of the case makes it unnecessary to examine the plaintiff's second answer to the defendant's claim. The authority under which the defendant claims to interfere with the bridge having failed, such interference should have been restrained.

It is claimed that an action in equity to enjoin the defendant will not lie because the plaintiff has an adequate remedy at law. The defendant had begun, and threatened to continue, a series of trespasses, which would result in tearing down and removing from the highway the plaintiff's property. It was a continuing trespass, which the plaintiff was not obliged to endure until fully completed, and then rely upon an action for damages as its only redress. But no such defense was set up in the answer, nor distinctly raised at the trial, and it is too late to raise it on this appeal.

The judgment should be reversed, and a new trial granted; costs to abide the event. All concur.