(81 App. Div. 455.)

### BENNETT v. TOWN OF OGDEN.

(Supreme Court, Appellate Division, Fourth Department. March 10, 1903.)

1. TOWNS—CLAIMS—ASSIGNMENT.

> A person holding a legal claim against a town made an assignment of part thereof, and afterwards made a second assignment. The claim was audited, and included in the tax levy, and the money therefor paid over to the supervisor, who, having notice of both assignments, paid the second assignees, taking an indemnifying bond from them and the original claimant. The town board afterwards requested the first assignee to bring an action to determine his rights against the other assignees. *Held*, that the first assignee was entitled to judgment against the town for the amount of the claim.

Appeal from Special Term, Monroe County.

Action by Arthur Bennett against the town of Ogden to collect a claim. From a judgment on a nonsuit and dismissal of the complaint, plaintiff appeals. Reversed.

Argued before ADAMS, P. J., and SPRING, WILLIAMS, HISCOCK, and NASH, JJ.

William W. Armstrong, for appellant.

Chamberlain & Page, for respondent.

WILLIAMS, J. The judgment should be reversed, and judgment ordered for plaintiff for $171.60 and interest from January 30, 1900, pursuant to section 1187, Code Civ. Proc.

The only question involved in this appeal is whether this action will lie against the defendant. Prior to May 4, 1899, one Dr. Slayton had a legal claim of $475 against the town. On that day he bought a horse of one Sawens for $215, paid $50 of the purchase price in cash, and for the balance, $165, and interest to January 1, 1900, when the claim would be paid by the town, $6.60—amounting in all to $171.60—he gave Sawens an assignment, in writing, of a portion of his claim against the town. On May 9, 1899, Slayton, claiming he had suffered damages in the horse deal, and desiring to prevent Sawens from getting anything from the town upon his assignment, made another assignment of his entire claim against the town to Luce and Tierney, for full value. Sawens assigned his claim to the plaintiff herein May 13, 1899, and the plaintiff and Luce and Tierney gave prompt notice in writing of their respective claims to the town, by filing same with the town clerk. May 16, 1899, Slayton sued Sawens before a justice of the peace for damages for breach of warranty as to the horse, and recovered a judgment for $175. In the fall of 1899 the town board audited Slayton's claim at the full amount, and the same was included in the tax levy, and was collected. Plaintiff again gave written notice of his claim to the town clerk, the tax collector, the supervisor, county treasurer, clerk of the board of supervisors, and to Slayton himself. Thereafter the tax collector paid the money to the supervisor, advising him of the plaintiff's notice, and the town board authorized the supervisor to dispose of the matter in his discretion upon Slayton giving an undertaking to protect the town. Slayton gave the undertaking with sureties (re-

citing the adverse claims to the money, and declaring that neither Sawens nor plaintiff ever had any assignment to the moneys), to indemnify the town against loss or damage for the payment of the money to Luce and Tierney. The undertaking was given January 30, 1900, and the supervisor thereupon, February 26, 1900, paid the money to Slayton for Luce and Tierney. The town board settled the supervisor's account, including this payment.

In the fall of 1901, the plaintiff again presented his claim in writing against the town for the $171.60 to the town board, and demanded payment. The town board adopted a resolution reciting plaintiff's claim, and stating its desire to have the claim withdrawn, and an action brought to determine the rights of the parties. The claim was accordingly withdrawn, demand was made upon the supervisor for the money, was refused, and this action was brought in December, 1901, against the supervisor and the town. Before issue was joined in the action, the supervisor died, and the action, being discontinued as to him, was continued against the town, and proceeded to trial. Only one question of fact was in dispute, and that was submitted to the jury, and was determined in plaintiff's favor. The facts were, therefore, settled as above stated, and upon these facts the court held the town was not liable, and judgment was entered for the defendant upon a nonsuit ordered.

It will be observed that the decision was not based upon the proposition that the town could not be sued as a corporation. There is no doubt about that; certainly since the passage of the general town law (chapter 569, Laws 1890). The only question here involved is whether, upon the facts established in this case, there was a legal liability on the part of the town for which an action could be maintained.

The whole claim of Dr. Slayton had been allowed by the town board, and the money raised to pay it, and placed in the hands of the supervisor of the town. The legal title to the $171.60 of this claim had been transferred to this plaintiff, and then the supervisor, by and with the consent of the town board, paid this latter amount to Dr. Slayton for Luce and Tierney, instead of paying it to the plaintiff, and this with full notice of plaintiff's rights. True, Dr. Slayton and Luce and Tierney disputed the plaintiff's right to the money, but they gave security to protect the town against any claim by the plaintiff, and after the payment of the money the town board requested the plaintiff to bring an action to determine the rights of the parties. Under these circumstances we think the town was liable to the plaintiff for the moneys, and that this action could be maintained. The money had been raised by the town, and placed in the hands of its supervisor, who, by statute, was made its legal custodian, as its agent or quasi treasurer. He had given security to protect the town for any misappropriation of its moneys. The $171.60 was an indebtedness by the town to plaintiff, allowed and liquidated. Until such debt was actually paid to the plaintiff, the town remained liable therefor, and an action could be maintained to enforce such liability.

In Federgreen v. Town of Fallsburgh, 25 Hun, 152, an action was brought to recover the amount of some coupons upon bonds issued

by the town in aid of the construction of a railroad. The money to pay the coupons had been collected and placed in the hands of the railroad commissioners of the town, but had not been deposited by them to meet the coupons. It had been misappropriated by the commissioners. The court held the town liable; that the bonded indebtedness was a debt or liability of the town, and it remained liable until it was paid. Placing the money in the hands of the commissioners did not pay the obligation, any more than placing moneys in the hands of the county treasurer would discharge county liabilities. Another action of a like character was Marsh v. Town of Little Valley, 64 N. Y. 112. It may be claimed that these were cases where the liability of the town was fixed by statute, and no audit of the town board was necessary, while in this case the claim had to be presented and audited by the town board. This distinction between the two cases does not exist. The plaintiff here had no claim to be audited. The whole Slayton claim had already been presented to the town board, and audited, and the money raised by taxation for its payment, and placed in the supervisor's hands. The liability of the town to pay had thus been as effectually established as it could have been done by any statute. The plaintiff's claim was for a part of the money in the hands of the supervisor. The only question was as to his title, by assignment from Slayton, to the portion of the money he claimed. It was like the question that would have arisen in the bond cases if the defendant had disputed the plaintiffs' title to the coupons sued on. The plaintiff here occupied practically the same position that Slayton would have occupied if he had made no assignment of any portion of his claim, but had himself demanded the money, and the supervisor had refused to pay it, having misappropriated the money, or used it for some purpose other than that for which it had been raised and placed in his hands. Slayton could have sued the supervisor for the money, or procured a mandamus to compel payment by him; but, if the money could not be recovered by those remedies, the town would still remain liable therefor. It was the debt of the town; its liability therefor had been established in the usual way, and, if not paid by the supervisor, it could be recovered from the town by action, as in the bond cases referred to. The town, upon payment of the money, could resort to the bond given by the supervisor. Slayton could not do so, and in case of the failure of his remedies against the supervisor he would have no means of securing his money except by action against the town. In the bond cases it was held that while the remedy by action and mandamus against the town officer existed, the rights of action against the town also existed, and might be applied. In this case the action was against the supervisor as well as the town, but before the trial the supervisor died, and all remedy against him by action or mandamus was gone. Certainly, the only remedy left—action against the town— could then be applied.

The town here occupies an unenviable position. It has security from Slayton to protect it from all loss in the premises. It is also protected by the bond of its supervisor. Its town board requested the plaintiff to bring an action to settle the question of title to this

money, and yet it objects to the relief being granted which the facts now established show the plaintiff entitled to. The town cannot suffer. It can only hope to aid Slayton in doing an injustice to the plaintiff and his assignor. Slayton has kept the horse, has paid only $50 of the $225 purchase price thereof, has a judgment for breach of warranty of $175, upon the theory, apparently, that he had paid the whole purchase price, and now hopes to deprive the plaintiff of the $171.60, which was a part of such purchase price. Justice and fair play call for a judgment in plaintiff's favor here, and we see no legal objection to such a result.

The judgment should be reversed, and a judgment ordered for the plaintiff for the amount of his claim, $171.60, with interest thereon from January 30, 1900, pursuant to section 1187, Code Civ. Proc.

Judgment reversed, with costs. All concur.