ACME ROAD MACHINERY CO. v. TOWN OF BRIDGEWATER.

(Supreme Court, Appellate Division, Fourth Department. May 3, 1905.)

TOWNS—HIGHWAY COMMISSIONER—PURCHASE OF ROAD MACHINE—LIABILITY OF TOWN.

> Highway Law (Laws 1890, p. 1179, c. 568) § 6, as amended by Laws 1896, p. 1120, c. 987, provides that the commissioners of highways may, with the approval of the town board, purchase a road machine, and pay for it with money set apart for highway purposes. A commissioner purchased a machine subject to the approval of the town board. The board thereafter approved the purchase. At the time of the making of the contract and of the delivery of the machine the commissioner had sufficient money in his hands set apart for highway purposes to pay for it. *Held,* that the seller was entitled to maintain an action against the town for the price.

McLennan, P. J., and Stover, J., dissenting.

Appeal from Judgment on Report of Referee.

Action by the Acme Road Machinery Company against the town of Bridgewater. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

L. D. Edwards, for appellant.
Joseph J. Dudleston, for respondent.

SPRING, J. Section 6 of the highway law (chapter 568, p. 1179, Laws 1890) was amended by chapter 987, p. 1120, Laws 1896, as follows:

"The commissioner or commissioners of highways may, also, with the approval of the town board, purchase and hold for the use of the town at large, one or more road machines, and pay for the same with money appropriated and set apart for highway purposes."

In 1902 Milton Tripp was the commissioner of highways of the defendant. In March of that year the said commissioner purchased of the plaintiff, a manufacturing corporation, a Ft. Wayne road machine for $225, subject to the approval of the town board of said town. The board early in April approved of this purchase, and so advised the plaintiff. About the 20th of April the plaintiff, pursuant to this approved contract of sale, delivered said machine to the defendant at the place agreed upon, informing the said commissioner, who declined to pay for the same. At the time of the making of said agreement and also of the delivery of said machine the commissioner had more than sufficient moneys in his hands "set apart for highway purposes" to pay for said machine. Another machine, shortly after, was purchased on behalf of said town for $200, and paid for by said commissioner out of the town funds. Upon the refusal of the commissioner to pay for said machine this action was commenced, and one of the defenses interposed and the chief one litigated is that no contract in fact was made by said commissioner of highways or approved by the town board. This question of fact was determined in favor of the plaintiff, and the evidence supports the findings of the referee. In the record before us, therefore, we have a valid agreement to purchase made by the

commissioner of highways of the defendant with the plaintiff, its approval by the town board, fortified by the further fact that the highway commissioner had ample funds in his hands with which to meet the purchase made.

The first objection is that the act contemplates a cash payment, not a sale upon credit.  The act implies a contract of purchase, for it is to be approved by the town board.  That body does not pass a general resolution permitting the commissioner to purchase a road machine.  The commissioner has already acted, and reports to the town board the agreement he has made.  If sanctioned by the board, the agreement becomes a valid contract of sale.  When the machine is delivered, payment is due, and the sale is not upon credit, and there is no extension of time simply because the defendant has defaulted in payment.  If there is a refusal to pay, certainly the seller has a remedy to enforce his contract.  It would be an anomalous condition if the statute permitted a valid agreement of purchase and sale of a road machine to be made, but prevented the recovery of the purchase price upon delivery because the commissioner declines to pay.  In the present case it was delivered as agreed and payment was demanded, and more than that the plaintiff could not do.  It was not obliged to return the machine to its manufactory, cancel its agreement, and abandon its claim.

But it is urged that the town is not liable.  The commissioner is authorized to make the purchase, and the machinery belongs to the town.  The money in the custody of the highway commissioner was the property of the town.  It was not misappropriated, but was used presumably for the benefit of the town.  If the town has the machine, and the money which should have been used for its payment has been applied to other town expenses, it would seem that the town must stand sponsor for this valid agreement.  Section 182 of the town law (chapter 569, p. 1237, Laws 1890) provides that any action on behalf of the town "upon a contract lawfully made by any of its town officers * * * shall be in the name of the town."  Also, if the action is to enforce any liability or contract against the town, it shall be named the defendant.  Further: "And all contracts made by such officers for and in behalf of their towns shall be in the name of the town.  When such contracts are otherwise lawfully made, they shall be deemed the contracts of the town, notwithstanding it is omitted to be stated therein that they are in the name of the town."  The essential element to give validity to the contract of the highway commissioner is its approval by the town board, and when that has been obtained the contract becomes a binding liability against the town.  The contract is made in the name of the town, approved by the town board, and the article purchased becomes the property of the town, so that the town cannot escape payment upon the ground that its highway commissioner does not represent it.  Section 10 of the highway law, as amended by chapter 84, p. 108, Laws 1899, requires the commissioner, when a bridge or any highway has been damaged or destroyed, and the repair or rebuilding will cost to exceed $500, to enter into a written contract therefor, which must

be approved by the town board. When the contract has been so approved, the town becomes charged with the liability created. People ex rel. Groton Bridge Co. v. Town Board, 92 Hun, 585, 36 N. Y. Supp. 1062; Town of Saranac v. Groton Bridge Co., 55 App. Div. 134, 67 N. Y. Supp. 118. Prior to 1881 no liability attached to a town for injuries resulting from a defective highway. There was no common-law liability imposed upon a town for the care of its highways, so that the commissioner alone was responsible for injuries accruing through his negligence. He was not, therefore, the agent of the town. He received moneys to be devoted to the maintenance of the highways. Lack of funds was a defense available to him. Hover v. Barkhoff, 44 N. Y. 113. In 1881 (Laws 1881, p. 935, c. 700) the law was changed, and a statutory liability was imposed upon the town, and it became in a measure responsible for the acts of its commissioner in the care and maintenance of its highways. Bush v. D. L. & W. R. R. Co., 166 N. Y. 210, 220, 221, 59 N. E. 838. The care of the highways became of vital concern to the town. The commissioner was not in terms made its agent, but by reason of the liability which might be imposed upon it because of his negligence the acts already noted were placed upon the statute books, giving him in certain cases specific authority subject to the approval of the town board. The effect of this legislation in the light of the new liability chargeable to the town must have been to constitute the commissioner the representative of the town within the compass of the statutory authority committed to him. He is not the general agent of the town, but where he is charged with the making of an agreement for the benefit of the town that contract is the contract of the town, and he its representative in creating the liability which the agreement fixes. The commissioner of the defendant made an agreement strictly within the purview of the statute authorizing the purchase of the road scraper. By section 182 of the town law that agreement was the contract of the town. The defendant resisted payment, claiming that the commissioner did not make any agreement at all. With that issue settled' against the defendant, it cannot escape liability on the plea that the contract was that of the commissioner instead of the town.

Nor do I think the claim of the plaintiff should have been presented for audit to the town board at its annual meeting. It, of course, is the general policy of the law that accounts against a town shall be passed upon by the town board at its annual meeting. But I find no authority requiring that course where there is a fixed liability against the town, except when the section authorizing the expenditure in terms makes the audit necessary, as in the case of extraordinary repairs of highways or bridges. Section 10, Highway Law, c. 84, p. 108, Laws 1899. In the event of an expenditure for emergency repairs it is not expected that the commissioner will have funds to meet an outlay in excess of $500, so an audit is required, and the expense is to be "collected in the same manner as amounts voted at town meetings." Section 10, supra. The un-expected stress requires prompt action, and, as the town is not pre-

pared to meet the expenditure, an audit is provided for, and the town is thus given an opportunity to raise the money. The fact that the Legislature provided for an audit indicates that an action could have been maintained on the written agreement without any audit had no statute required that the claims be run through the ordinary auditing channel.

Section 161 of the town law (chapter 569, p. 1233, Laws 1890) requires the accounts of town officers to be audited by the board. This claim is not within that category, for it is a demand against the town, not an account of a town officer. If the commissioner had paid the purchase price for the machine, he would need include it in his statement of expenditures. The town board is the auditing body, and its sanction is essential to give vitality to the agreement. When the liability has become fixed by ratification, the town board has acted, and a subsequent audit by the same body is unnecessary. The rule apparently is that, when the demand is unliquidated and unadjusted, it must be audited by the board. When it has become a settled and established liability, an action will lie without any further audit, unless the statute in terms provides otherwise. Bennett v. Town of Ogden, 81 App. Div. 455, 81 N. Y. Supp. 56; Marsh v. Town of Little Valley, 64 N. Y. 112. The judgment should be affirmed, with costs.

Judgment affirmed, with costs.

HISCOCK, J., concurs.    WILLIAMS, J., concurs in result.

McLENNAN, P. J. (dissenting). While the evidence is in some respects conflicting, we think it fairly supports the material findings of fact found by the learned referee, viz., that on the 8th day of March, 1902, one Milton Tripp, who was then the sole commissioner of highways of the defendant, had negotiations with the plaintiff's superintendent which resulted in an agreement by the commissioner to take and purchase from the plaintiff a road machine at the price of $225, provided the board of town auditors of the defendant would consent to the purchase and would approve of the same; that on the 5th day of April, 1902, the town board, having been informed of what Tripp had done in the premises, approved of said purchase by resolution duly adopted, of which action the plaintiff was notified; that thereafter, and on or about the 21st day of April, 1902, the plaintiff delivered to Tripp, as commissioner of highways of the defendant, said road machine; "that at all the times above mentioned said commissioner had funds of defendant appropriated and set apart for highway purposes in the sum of over $500"; that on May 30, 1902, the plaintiff demanded from Tripp, as commissioner, payment of the purchase price of the machine in question, which he neglected and refused to pay, and the defendant has paid no part of said claim. The referee, upon defendant's request, also found "that it is not proven that the claim made in the complaint herein was ever presented to the board of town auditors of said defendant for audit prior to the commencement of this action." The referee decided that the defendant is not liable for the

plow for which the plaintiff sought to recover. Therefore, the plaintiff not having appealed, that part of its claim need not be considered.

Upon the foregoing facts, the referee determined that this action could be maintained against the defendant, and that the plaintiff was entitled to recover the purchase price of the road machine in question, with interest from the date when payment was demanded, and judgment was awarded against the defendant for that amount, besides the costs of the action.

The defendant challenges the correctness of such determination and judgment upon the ground that the commissioner of highways or the town board of the defendant, acting either separately or jointly, had no power or authority to obligate the defendant for the payment of the purchase price of the machine in question, and also upon the ground that in any event the plaintiff's claim should have been presented to the board of town auditors for audit before any action or proceeding could be legally maintained for its enforcement or collection.

It is well settled that the powers of officers of towns are only such as are expressly conferred by statute, or such as are purely incidental to the exercise of the powers so conferred. People ex rel. Everetts v. Supervisors, 93 N. Y. 397; People ex rel. Van Keuren v. Town Auditors, 74 N. Y. 310. The rule applies equally to the town itself. It can incur no obligation not expressly authorized by statute, no matter in what form it may assume to act. Wells v. Town of Salina, 119 N. Y. 280, 23 N. E. 870, 7 L. R. A. 759. A statutory requirement or duty imposed upon, or act permitted to be done by, one officer, cannot be legally assumed or performed by another officer, and thereby create a liability against the town. Adee v. Arnow, 91 Hun, 329, 36 N. Y. Supp. 1020.

In the case at bar we are concerned solely with the acts of the commissioner of highways and of the board of town auditors of the defendant, and are to ascertain whether their acts, as found by the referee, created a liability against the town. First, then, what are the statutory powers of a commissioner of highways of a town? In People ex rel. Van Keuren v. Town Auditors, supra, it was held that the commissioner of highways was not an agent of the town. In that case the duties and powers of commissioners of highways, and the relations which they sustain to their respective towns, are fully and yet concisely stated. The court, per Andrews, J., said:

"Under our system, no corporate duty is imposed upon towns in respect to the care, superintendence, or regulation of highways within their limits. Commissioners of highways have, by the statute, the care and superintendence of highways, and, in the administration of the highway system, they, and the overseers of highways in subordination to them, are independent public officers, exercising public powers, and charged with public duties specially prescribed by law. * * * They receive and disburse the money raised by taxation for the maintenance of highways, and apply it in their discretion, independently of any control of the town, and are not in any respect subject to its discretion in the discharge of their duties. * * * On the other hand, the town, in its corporate character, has no control over the highways. * * * The town exercises but two important functions in respect to highways. It elects the commissioner of highways, and determines, through

the electors, in town meeting, what sum, if any, exceeding $250 in each year, shall be raised by taxation for the improvement of highways and bridges. The election of commissioners of highways by the towns is a convenient method of designating suitable public agents to discharge the duties imposed for general public purposes upon those officers, and the state has committed to the portion of the public residing in the locality to determine, within certain limits, what amount of taxation shall be imposed for the support of highways. These circumstances do not, however, make highway officers the agents of the town, so as to subject the town to liability for their acts. This view has been held by the Supreme Court in many cases, commencing with the case of Morey v. The Town of Newfane, 8 Barb. 645, in which an able opinion was delivered by Selden, J. See Town of Fishkill v. Plankroad Co., 22 Barb. 645; Town of Gallatin v. Loucks, 21 Barb. 578; Town of Galen v. Plankroad Co., 27 Barb. 543; Gailor v. Herrick, 42 Barb. 79."

The doctrine thus enunciated was fully approved in People ex rel. Everetts v. Board of Supervisors, supra. In that case the court, per Ruger, C. J., said:

"While acting in that capacity, under the powers conferred upon them by statute, they [the commissioners of highways] proceed independently of any control or direction on the part of the town, and owe it no duty or obligation, except to disburse the moneys with which they are supplied by the town in good faith and according to their best judgment. They have no general power or authority to bind the town by their contracts or undertakings, and are individually responsible alone to those with whom they contract, if any responsibility is thereby created. Their power, duties, and obligations are expressly defined by statute, and the manner and methods of raising funds by which they are enabled to perform such duties are pointed out and declared by express statutory enactment. * * * Under our system for the care, superintendence, and regulation of highways, no corporate duty is imposed upon towns in respect thereof. * * * The statute provides the commissioners of highways, with certain assessments for labor, and also with moneys not exceeding $250 in amount, annually, in each town, for the maintenance and care of its roads and bridges, but the methods by which those moneys are raised do not require the assent of the town, and are altogether independent of its volition. Beyond this, any contributions or obligations by the towns for the repair of roads and bridges can be attained only through their voluntary consent, given in open town meeting in the manner provided by statute. To impose liabilities upon towns for the repair of their roads and bridges in any other manner than that provided by the statute would defeat the policy of the law as it has stood in this state for upwards of half a century, and would require explicit statutory provision to authorize it. Not only are the towns exempt from the burden of any general duty in respect to the care and maintenance of roads and bridges, so neither are commissioners of highways charged with any such duty, except in so far as they are furnished with the power to provide means or are previously provided with funds by the town to accomplish such purpose."

The correctness of the decisions in those cases has never been questioned, so far as I am aware, and must be regarded as expressive of the law of the state as applied to the questions discussed, except as such law has since been changed by statute. The statutes which prescribe the duties and powers of the various town officers, and the liability of the towns for their acts and omissions, and the duties and obligations of the town in respect to its highways, are found in the provisions of chapter 569, p. 1211, of the Laws of 1890, known as the "Town Law," and chapter 568, p. 1177, of the Laws of 1890, known as the "Highway Law." From an examination of those laws, it will be discovered that they have not been changed in any respect involving the questions presented by

this appeal since the decision of the two cases referred to, except that now $500 may be raised by the town without a vote of the electors, and expended by the commissioner of highways for highway purposes, instead of $250, as formerly, and that now, in case it is necessary to expend more than $500 for such purposes, any additional sum can be raised only by vote of the town, whereas formerly it was necessary to have such vote in case more than $250 was thus necessary, and, also except that it is now provided by section 182 of the town law that:

"Any action or special proceeding for the benefit of a town, upon a contract lawfully made with any of its town officers, to enforce any liability created or duty enjoined upon those officers, or the town represented by them, or to recover any penalty or forfeiture given to such officers, or the town represented by them, or to recover damages for injury to the property or rights of such officers, or the town represented by them, shall be in the name of the town. Any action or special proceeding to enforce the liability of the town upon any such contract, or for any liability of the town for any act or omission of its town officers, shall be in the name of the town; and all contracts made by such officers for and in behalf of their towns shall be in the name of the town. When such contracts are otherwise lawfully made, they shall be deemed the contracts of the town, notwithstanding it is omitted to be stated therein that they are in the name of the town."

The provisions of this section, we think, in no manner change the rights of the parties to this action from what they would have been under the law before such section was enacted. That section, among other things, provides that any action to enforce the liability of a town for any act or omission of its town officers shall be in the name of the town, and includes the liability of a town for defective highways, as specified in section 16 of the highway law, but in such case the issue to be tried is whether or not the negligence of the commissioner caused the injury complained of, and the negligence of the town, as such, is not involved; and, in case a recovery is had in such an action, section 17 of the highway law provides that the commissioner shall be liable to the town for the amount of the judgment recovered, and interest thereon. Section 182 of the town law clearly has reference only to such "contracts" as the officers of the town were authorized to make in the name of the town, and such as would lawfully create an obligation against it. As we have seen, under the authorities cited, the town had no authority to make a contract in respect to the improvement or maintenance of its highways, and the commissioner of highways had no authority to create any liability upon the town for such purpose. As was said in People ex rel. Everetts v. Supervisors, supra, by Ruger, C. J.:

"They [the commissioners] have no general power or authority to bind the town by their contracts or undertakings, and are individually responsible alone to those with whom they contract if any responsibility is thereby created."

It cannot be said that under this section a commissioner of highways may assume to enter into a contract which in terms creates an obligation against the town, when under the law he had no authority to make such a contract, and that then such contract may

be enforced against the town in an action brought against it in its corporate name.

Colby v. Town of Day, 75 App. Div. 211, 77 N. Y. Supp. 1022, was an action brought against the town to recover damages for the breach of a contract made with the town, through its town board, for the construction of abutments for a bridge. It was held that the action could not be maintained, upon the ground, among others, that the town board had no authority to make such contract.

The only authority given to the commissioner of highways of the defendant town to purchase the road machine in question is contained in section 6 of the highway law, which provides:

"The commissioner or commissioners of highways may also, with the approval of the town board, purchase for the use of the town at large, one or more road machines and pay for the same with money appropriated and set apart for highway purposes."

We have assumed that, in accordance with the provisions of that section, the commissioner purchased the machine in question, and that the town board approved such purchase. Notwithstanding such approval by the town board, it was still the contract of the commissioner. The purchase was made for the purpose of improving the highways of the town, and, under the law, as we have seen, no officer or person other than the commissioner had any power or authority to make such purchase or any purchase for such purpose. It would not have added in the least to such contract if it had been in the name of the town, for the town, as such, was not authorized by any statute to act in the premises; and, it being a contract which could not have legally been made in the name of the town, it clearly did not fall within the provisions of section 182 of the town law, above referred to. Besides, section 6 of the highway law does not purport to authorize the highway commissioner or the board of town auditors to obligate the town for the payment of such machine; but, on the contrary, it expressly provides that the machine or machines so purchased by the commissioner with the approval of the board shall be paid for "with money appropriated and set apart for highway purposes," which money, as the referee has found, was appropriated, was set apart, and was in the hands of the commissioner of highways. If the contention of the respondent is to prevail, it seems to me that the plain intent of the Legislature that the expenditure in any one year by a town for the repair and maintenance of highways shall be limited to $500, unless a greater sum is voted for that purpose by the taxpayers, may be absolutely nullified. Suppose that the electors of a town vote to raise $500, in addition to the amount authorized by statute, for the purpose of improving and maintaining the highways and bridges of the town, thus making $1,000, which is turned over to the commissioner of highways to be expended in his discretion, and as he may deem proper for that purpose. Suppose that, with that money in his hands, or having expended the total amount thereof upon the highways, he should buy "one or more road machines" at $250 each. If the town is liable for the purchase or purchases, it will have been compelled, in case he buys three machines, to ex-

pend $1,750 in one year for the care and maintenance of its roads and bridges, instead of $1,000, the maximum amount which the commissioner was authorized to expend under the vote of the inhabitants of such town.

There ought not to be any misunderstanding about the proposition in this case. The commissioner of highways was authorized by vote of his town to expend only a certain amount. That sum, or sufficient to pay for the machine in question, was in his possession, and was applicable to that purpose, when the machine in question was bought, and when this action was commenced. He refused and neglected so to apply it, and by the judgment rendered in this action, if it should stand, the town is liable for, and will be compelled to pay, $225, in addition to the sum appropriated by it for the year 1902 for the care and maintenance of its highways. The provision of section 6 of the highway law, to which attention has been called, did not add to the power of the commissioner of highways, but it rather was a limitation upon such power. By it such commissioner is prohibited from purchasing a road machine under any circumstances unless such purchase is approved by the board of town auditors. Neither can he make such purchase unless the purchase price is paid out of moneys in his hands appropriated by the town for highway purposes. It was a check upon the expenditure of the moneys in his hands, and did not authorize the expenditure of an amount in addition to said sum. If the commissioner of highways, with the approval of the town board of the defendant, could lawfully buy or contract for the machine in question, and, upon the refusal of the commissioner to pay for such machine out of moneys which had been appropriated and were in his hands for the repair and maintenance of the highways of the town, the town became liable for the purchase price of such machine, it is safe to say that there is no limit upon the power to purchase of such commissioner and board, when acting in concert, and the taxpayers of such town could easily be made bankrupt by such officials, or, at least, be taxed for highway purposes in excess of one-third of 1 per cent. upon the taxable property of the town— the maximum amount which may be raised in any one year for such purpose. It is of no consequence that hardship may result to the plaintiff if not permitted to recover upon the contract in question in this action. As was said by Judge Folger in McDonald v. Mayor, 68 N. Y. 23–27, 23 Am. Rep. 144: "It is fundamental that those seeking to deal with a municipal corporation must take great care to learn the nature and extent of their power and authority." It is concluded that by the contract of purchase of the road machine in question made by the commissioner of highways of the defendant, although approved by its board of town auditors, no liability was imposed upon the town; that the plaintiff's right of action, if any, was against the commissioner of highways individually, or by suitable proceedings to compel him to pay for said machine out of moneys, which the referee has found, in effect, were in his hands and applicable to such purpose.

I am also constrained to hold that the failure of the plaintiff to present its claim to the town board of auditors of the defendant for audit before the commencement of this action was fatal to its right to recover, independent of any other question. Section 161 of the town law provides:

"At the meeting of the town board * * * all town officers who receive or disburse any moneys of the town shall account with the board for all such moneys received and disbursed by them by virtue of their office. * * * The board shall make a statement of such accounts and append thereto a certificate, signed by at least a majority of them, showing the state of the accounts of each officer at the date of the certificate. * * *"

Section 162 provides:

"The meeting of the town board * * * shall be for the purpose of auditing accounts and allowing or rejecting all charges, claims and demands against the town. * * *"

From the above provisions of the statute it would seem to be clear that the board of town auditors of a town has certain well-defined powers and duties to perform. According to the express language of the statute, one of the purposes of its existence is auditing accounts and allowing or rejecting all charges, claims, and demands against the town. In People ex rel. Myers v. Barnes, 114 N. Y. 317, 20 N. E. 609, 21 N. E. 739, the court said:

"Such board is a statutory tribunal or court to hear and to allow or reject any claims presented against the town. The examination of the account is the trial, and its allowance or disallowance is the judgment of this tribunal. As a general rule, no claim against a town is obligatory upon or is enforceable against the town until it has been audited or examined and allowed. Its jurisdiction over claims against the town is not only original, but it is conclusive until brought under review in another court, in the manner prescribed by law."

See, also, Osterhoudt v. Rigney, 98 N. Y. 234. "The board of town auditors is to determine whether a claim presented is a town charge, and the amount of it, or the portion of it, which is a town charge." See, also, Colby v. Town of Day, 75 App. Div. 211, 77 N. Y. Supp. 1022; In Malloy v. Board of Health, 60 Hun, 422, 15 N. Y. Supp. 487, it was held that the claim of the plaintiff under a contract with a town board of health for the digging of a drain to abate a nuisance must be presented to the board of town auditors for audit. In Bell v. Town of Esopus, 49 Barb. 506, it was held that an action will not lie against a town to recover a claim arising upon a contract. See, also, Bragg v. Town of Victor, 84 App. Div. 83, 82 N. Y. Supp. 212.

The only exception to the rule which requires a claim against a town to be presented to the board of town auditors is where the claim demanded is created and its amount fixed by statutory authority. As was said in Marsh v. Town of Little Valley, 1 Hun, 556:

"The bonds in this action are the clear, undisputed, and liquidated debts of the town, and we have no doubt that the action was properly brought thereupon, as held by the court at circuit."

In Brown v. Town of Canton, 4 Lans. 409, the action was upon town certificates of indebtedness issued for bounty to volunteers, which became, by the provisions of section 1 of chapter 8, page 12, of the Laws of 1864, debts of the town. The court sustained the right of action against the town, upon the ground that the statute under which the claim arose made the claim a debt against the town, and thereby exempted it from adjudication by the board of town auditors.

We think the exception which is made in those and similar cases to the general rule which requires all claims against a town to be presented to the town board of auditors for audit in no way justifies the bringing of the action at bar by the plaintiff against the town without first having presented it to the town board of auditors for audit, even if such claim were a valid obligation against the town, which, as we have seen, it was not. If the claim of the plaintiff, even assuming that it constitutes a valid obligation against the town, need not be presented for audit, it is difficult to see upon principle what claim or class of claims against a town must be so presented. Certainly the demand was not liquidated; the amount was not conclusively established. It would have been competent for the defendant upon such audit to have shown that the purchase price of the road machine in question was only $200, instead of $225, as claimed by the plaintiff. It would have been competent to show if such had been the fact, that the road machine had never been delivered, or that it was defective in some material respect. The practical utility of requiring all claims against a town to be presented for audit is forcibly illustrated in this case. So far as appears, no demand was made of the board of town auditors for payment of plaintiff's claim. Such demand was only made of the commissioner of highways, between whom and the town board, as appears by the evidence, there was a conflict, and immediately upon the refusal of the commissioner to pay, without any opportunity on the part of the board to adjust the matter, this action was brought, the costs of which amount to considerably more than the original claim. It seems to me that, even if plaintiff's claim constituted a valid obligation against the town, it should have been presented to the board of town auditors of the defendant for audit, and a failure so to present it would also bar a recovery.

We have discussed the questions involved in this case at considerable length, not because of the amount involved, which is not large, but because we deem it important that the inhabitants of the towns of this state should know whether or not their respective commissioners of highways have authority to purchase one or more road machines with the approval of the town board, and obligate such town to pay for the same, irrespective of what amount such town may have appropriated for highway purposes and paid over to such commissioner to be expended by him in such manner as he may see fit; and also because they should know whether or not an action may be brought to recover even a valid claim against a town, which is not created and the amount fixed by statute, without presenting the same to the board of town auditors for audit.

I am led to conclude that, for the reasons above indicated, the judgment appealed from should be reversed, and, as the action is unauthorized, the complaint should be dismissed, with costs.

STOVER, J., concurs.