THE PEOPLE ex rel. ABEL S. MYERS, Appellant, *v.* JOHN BARNES et al., as the Board of Town Auditors of the Town of Highlands, Respondents.

The term "audit," as applied to the action of a board of town auditors, means to hear and examine; it includes both the adjustment or allowance and the disallowance or rejection of an account.

As a general rule no claim against a town is obligatory upon or enforceable against it until it has been audited and allowed by said board. Its jurisdiction over such claims is not only original but its decision is conclusive until reversed or modified by another court in the manner prescribed by law, *i. e.*, in proceedings by *certiorari*.

In proceedings by *mandamus*, instituted by a commissioner of highways, to compel the board of town auditors to audit certain claims against the town for costs awarded against the relator and paid by him in actions

brought by him as such commissioner, and for moneys expended by him in that capacity, it was admitted that the claims had been presented to former boards and rejected by them on the ground that the town was not legally liable to pay them. *Held*, that the former adjudications were conclusive, and that until reversal they formed a bar to a reauditing of the bills and to the application for a *mandamus* to compel it.

Neither the Revised Statutes (1 R. S. 357, § 8), nor the Code of Civil Procedure (§ 1931), impose an absolute liability upon towns for all judgments recovered against a sole commissioner of highways in actions prosecuted by him in his official name.

The board of town auditors have power to examine and determine whether the action was one the commissioner had the right to prosecute in his official character and whether it was carried on in good or bad faith.

In determining as to the liability of the town the board acts judicially, and its action cannot be reviewed or controlled by the courts through a writ of *mandamus*.

Reported below, 44 Hun, 574.

(Argued March 5, 1889; decided March 19, 1889.)*

Appeal from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made February 1, 1887, which overruled the relator's exceptions, affirmed a judgment entered upon an order dismissing the complaint and the application for a writ of *mandamus*.

The nature of the proceeding and the facts are sufficiently stated in the opinion.

*T. F. Bush* for appellant. The board cannot avoid the performance of its duty of auditing and certifying claims by deciding erroneously that they were not legal town charges. (*People* v. *Bd. of Supervisors*, 11 Hun, 306; 73 N. Y. 173; Laws of 1840, chap. 305; 1 R. S. [7th ed.] 834, 835, 841; *People ex rel.* v. *Chapin*, 105 N. Y. 309; *People* v. *Supervisors of Delaware Co.*, 45 id. 196; *People* v. *Town Auditors*, 82 id. 80.) If the board decides that an illegal claim is legal and audits it, the audit is without jurisdiction and void, and a *mandamus* will lie to compel a change of decision and a cancellation of the audit. (*People* v. *Lawrence*, 6 Hill, 244; *People* v. *Bd. of Suprs.* 11 Hun, 306; 73 N. Y.

* This case was not reported in its order, as a motion for reargument was pending.

173.) All the claims presented by the relator are legal town charges. (1 R. S. [7th ed.] 841, §§ 2, 8; Code of Civil Pro. §§ 1926, 1931; 2 R. S. [7th ed.] chap. 16, part 1, title 1, §§ 16, 48, 53; *People* v. *City of Kingston,* 101 N. Y. 96; *People* v. *Supervisors,* 45 id. 196; *People* v. *Town Auditors,* 82 id. 80; *Gould* v. *Glass,* 19 Barb. 179, 189.) The unqualified power of the highway commissioners to sue for penalties carries with it the right to employ all the remedies provided by law, and to incur such expense as may be necessary to reach a final determination of the controversy. (*People* v. *Town Auditors,* 74 N. Y. 310; 75 id. 316; *People* v. *Supervisors of Ulster,* 93 id. 397.) The settlement with the relator and certificate made and entered by the board of the amount due him, $128.17, March 4, 1882, was a judicial act, and put the existence and amount of the claim beyond question. (1 R. S. [7th ed.] 834, 835, §§ 46, 47, 48; Laws of 1863, chap. 172; *Osterhoudt* v. *Rigney,* 98 N. Y. 222; *People* v. *Supervisors,* 45 id. 200; *Supervisors* v. *Briggs,* 2 Denio, 26; Laws of 1858, chap. 103; Laws of 1865, chap. 442; 2 R. S. [7th ed.] 1218.) It is not necessary that the consent of the board shall precede the expenditure, the statute does not in terms require it. It is the consent of the town officers, and not the order in which it is given, that constitutes the essential requirement of the statute. (*People* v. *Supervisors,* 93 N. Y. 401, 402; *G. S. Co.* v. *Whitten,* 7 Hun, 44; 69 N. Y. 337.) The board had jurisdiction through the special power conferred by this statute, and any informality or irregularity can only be corrected by a direct proceeding for review. (*Osterhoudt* v. *Rigney,* 98 N. Y. 237.) The commissioner acted within the line of his authority, and the order changing the districts was regular. (2 R. S. [7th ed.] 1213, § 5.) The exercise of discretion by the court below is reviewable here. (*People ex rel.* v. *Common Council,* 78 N. Y. 56–61; *People ex rel.* v. *Chapin,* 104 id. 96.) The decisions of the lower courts are based entirely on questions of law, as none of the material facts are disputed. (*Pharis* v. *Gere,* 107 N. Y. 231.) As to this claim, by the act of 1858, as amended (2 R. S.

[7th ed.] 1218), the board was vested with an absolute power to determine as to the necessity and propriety of the expenditure made and to consent or withhold consent to the same. (Laws of 1840, chap. 305, §§ 3, 4; 1 R. S. [7th ed.] 835; *Hull* v. *Suprs.*, 19 Johns. 259; *People ex rel.* v. *Suprs.*, 45 N. Y. 196; *People ex rel.* v. *Clerk of Marine Court*, 3 Abb. 491; *Judges of Oneida Co.* v. *People*, 1 Johns. 179.) When an account is presented for services which are legally chargeable to the county, it is the duty of the board to audit and allow it. How much shall be allowed rests in its discretion in subservience to established rules. But it must take action and allow the claim, when legal, at some amount. And if it does not, where there is no remedy by action, it can be compelled by *mandamus* to proceed so to do. (*People ex rel. Johnson* v. *Bd. Suprs.*, 45 N. Y. 196, 200, 206; *Hull* v. *Suprs.*, 19 Johns. 259; *People* v. *Clerk of Marine Court*, 3 Abb. Ct. App. Dec. 501; *People* v. *Suprs.*, 32 N. Y. 473; 51 id. 401; 5 Wend. 114; 58 Barb. 139; Laws of 1840, chap. 305; 1 R. S. [7th ed.] 835, 841, 842; 2 id. 926, 978, 979; *People ex rel.* v. *Bd. Town Auditors*, 82 N. Y. 180; *Osterhoudt* v. *Rigney*, 98 id. 222; *People* v. *Suprs.*, 93 id. 403.) If such a board, through an erroneous decision of the law, audits an illegal claim, their judgment is not final like the judgment of a court, but will be corrected by *mandamus*. (*People* v. *Bd. of Suprs.*, 73 N. Y. 173; *Bd. of Suprs.* v. *Ellis*, 59 id. 620.)

*Lewis E. Carr* for respondents. The writ was properly dismissed by the trial justice because the evidence given on the trial of the issues raised failed to establish such a clear, legal right in the relator to a *mandamus* as justifies a resort to that remedy. (*People ex rel. Stevens* v. *Hayt*, 66 N. Y. 606; *In re Gardner*, 68 id. 467; *People ex rel. Lunney* v. *Campbell*, 72 id. 496; *People ex rel. Krohn* v. *Miller*, 39 Hun, 557, 565; *People ex rel. Gas Light Co.* v. *Common Council*, 78 N. Y. 56, 61; *People* v. *Thomson*, 25 Barb. 73; *People ex rel. Demarest* v. *Fairchild*, 67 N. Y. 334; *People ex rel. Francis* v. *Common Council*, 78 id. 34; *People ex rel. Mil-*

*lard* v. *Chapin*, 104 id. 96, 100.)   When claims have once been passed upon by a board of town auditors and rejected upon their merits, no power exists in a subsequent board to review that decision or reopen the matter once decided.   The decision once made is as final as the judgment of a court.   (*Osterhout* v. *Rigney*, 98 N. Y. 222, 234; *People* v. *Suprs. of Schenectady*, 35 Barb. 408, 414; *People ex rel.* v. *City of Kingston*, 101 N. Y. 82, 94; *People ex rel. Everett* v. *Suprs. of Ulster*, 93 id. 397, 404; *People ex rel. Life Ins. Co.* v. *Chapin*, 103 id. 635; *Howland* v. *Eldridge*, 43 id. 457.)   The judgment in question for costs against the relator, which he paid, was properly rejected by the auditors when it was presented to them in 1883, and certainly in 1885.   (1 R. S. [7th ed.] 841, 842, § 2; *People ex rel.* v. *Town Auditors*, 74 N. Y. 310, 315, 316; *Monk* v. *Town of New Utrecht*, 104 id. 552, 557; *People ex rel. Bd. of Suprs.*, 93 id. 397, 403, 404; *People ex rel. Wallace* v. *Abbott*, 107 id. 225–227.)   Under the statute invoked by the appellant he was not put to his action until he was secured against the costs of the prosecution.   If he moved without that he had no claim against the town until the proper auditing officers had decided that his claim was one that the town ought to pay.   (*People ex rel. Bd. of Suprs.*, 93 N. Y. 404.)   Commissioners of highways are not town officers.   (*People ex rel. Van Keuren* v. *Town Auditors*, 74 N. Y. 310, 315; *People ex rel. Everett* v. *Bd. of Suprs.*, 93 id. 397, 404.)   Commissioners of highways have no power or authority to run the town in debt. (*Barker* v. *Loomis*, 6 Hill, 463; *Mather* v. *Crawford*, 36 Barb. 564; *Bridge Co.* v. *Barnett*, 1 S. Rep. 600, 603; *People ex rel. Van Keuren* v. *Town Auditors*, 74 N. Y. 310; *People ex rel. Loomis* v. *Town Auditors*, 75 id. 316; *People ex rel. Everett* v. *Bd. of Suprs.*, 93 id. 397, 401.)   The judgment rendered constitutes a bar to the claim for the balance of 1882, even if it be held that it at any time had any vitality against the town.   (*Dunham* v. *Brower*, 77 N. Y. 76, 80; *Blair* v. *Bartlett*, 75 id. 150, 153; *Brown* v. *Mayor, etc.*, 66 id. 385.)   The relator was not a town officer and his claims were

not town charges. (*People ex rel. Van Keuren* v. *Town Auditors*, 74 N. Y. 310, 315, 316; *People ex rel. Everett* v. *Bd. of Suprs.*, 93 id. 397, 403, 404.)

POTTER, J.    The issue arose upon an answer to an alternative writ of *mandamus* requiring the respondents, as the board of town auditors, to audit three claims in favor of the relator against said town and to certify the same to the board of supervisors of the county.

These claims are for the costs awarded in a judgment against the relator in an action commenced by the relator as commissioner of highways in said town against one Charles Hickok, to recover penalties incurred by him as one of the overseers of highways in said town, amounting to $76.10, which the relator paid, with interest, on the 3d day of November, 1883, for the necessary costs and disbursements incurred and paid by said relator in the conduct of said action and in two other actions · against the said Hickok for the same or a similar purpose, but withdrawn before judgment therein, and amounting to the sum of $80.15; and for moneys expended in the year 1881, after the annual town meeting in said town, and in excess of the moneys which came into the relator's hands for the repairing of bridges in said town with the alleged consent and approval of the board of town auditors, and amounting to $128.17.

The return to the writ contained allegations that these claims were unlawful and ·the town was not legally liable therefor, and that these identical claims had been presented by the relator in the year 1883, and again on the 5th day of November, 1885, and upon both occasions the same had been audited and rejected by the respondents as the board of town auditors.

Upon the trial, after the introduction of evidence of the judgment awarding costs against the relator, and of the character and consideration of the other two bills, the admissions hereinafter referred to were made and the evidence

was closed; the respondents made a motion for the dismissal of the complaint and a denial of the writ of *mandamus*, and the same was granted over the relator's exception, and the exceptions were ordered to be heard in the first instance at the General Term. The exceptions were heard and overruled and the order of dismissal affirmed.

I propose to consider, first, these admissions and their effect upon this proceeding.

The admissions were as follows: "It is admitted that the bills were presented to the board of town auditors of 1885. That they examined them, and decided that the town was not legally liable to pay for the whole or any part of them, and rejected them." The same admission was made as to the action of the board in the year 1883. "And it is further admitted that the bills presented to said board of town auditors, in November, 1883, were for the same claims as those presented in November, 1885."

Does not this admission constitute an auditing and a rejection of the claims? To audit is to hear, to examine an account, and in its broader sense it includes its adjustment or allowance, disallowance or rejection. (*People ex rel. Brown v. Board Appt.*, 52 N. Y. 227.)

The statute has created a board of town auditors to examine and decide upon claims made and presented against a town. (1 R. S. 358, 359, 328, 461, 479 Laws of 1881, chap. 701, in relation to judgments against towns or highway commissioners.)

Such board is a statutory tribunal or court to hear and to allow or reject any claims presented against the town. The examination of the account is the trial and its allowance or disallowance is the judgment of this tribunal.

As a general rule, no claim against a town is obligatory upon or is enforceable against the town until it has been audited or examined and allowed. Its jurisdiction over claims against the town is not only original, but it is conclusive until brought under review in another court in the manner prescribed by law. (*Osterhoudt v. Rigney*, 98 N. Y. 234.) The board of

town auditors is to determine whether a claim presented is a town charge and the amount of it or the portion of it which is a town charge.

The claims presented generally involve questions of mixed law and fact. In some instances the board will have nothing to examine as to the amount of the charge, but simply whether the prosecution or defense was conducted upon reasonable grounds and in good faith.

In certain classes of town charges the amount is fixed by statute, by agreement, or by the judgment of a court. Such are claims for salaries fixed by law, or the amount of damages or costs awarded by the judgment of a court. In some cases, where the rate of compensation by the day is fixed by law, the board determines the amount by ascertaining the number of days of service. For instance, a claim presented by highway commissioners that a judgment recovered against them for injuries arising from a defective bridge or highway. In such a case "a board of town officers   *   *   *   shall have power to audit and pay, *if they shall deem it just so to do.*" (Laws of 1881, chap. 700, 704.)

This board must determine the legality of the claim and whether it is a town charge. Oftentimes the legality and not the amount of the claim is the main, if not the only, question for examination. (*Tenney* v. *Mautner*, 24 Hun, 340 ; *People ex rel.* v. *Bd. of Suprs.*, 93 N. Y. 403.)

I think that it may be stated as a general, if not universal, proposition that no claim can be collected of or enforced against a town until it has been audited and allowed by the board of town auditors. (93 N. Y. 403, *supra ; People ex rel. Van Keuren* v. *Bd. Town Auditors*, 74 id. 310.)

Statutes have been passed and amended from time to time as to the manner of issuing execution against town and other officers and as to what property may be levied thereunder, but such statutes do not affect the question whether the claim is a town charge. Such is the character of section 1931 Code of Civil Procedure.

If the claim embraced in the judgment against the relator

1889.]     PEOPLE ex rel. MYERS v. BARNES et al.     **325**

Opinion of the Court, per POTTER, J.

is not to be submitted to the judgment of the board of town auditors, it would follow that a highway commissioner may commence actions without a cause of action or upon any pretext against any person whomsoever, and when beaten with costs, the town must pay the judgment.

If the judgment constitutes an absolute liability against the town, why go through the mere formality of presenting to the board for audit and allowance at all ?   Or what necessity or propriety in asking the court's mandate to the board of auditors to audit and allow it ?

If the board of town auditors have no discretion to exercise in allowing or rejecting such claim, why not present it at once in the first instance to the board of supervisors to levy and raise the money to pay it.   The admission is that all three claims were presented to and examined by the board and were rejected as illegal claims.   Their determination, it seems to me, like the determination of all courts, is conclusive until reversed or modified under proceedings by *certiorari*.   A *mandamus* will not issue commanding the board to do over again what it has done, but with a different result.   This would imply that the Supreme Court might dictate the judgment of the board. (*People ex rel. v. Town Auditors of Elmira*, 82 N. Y. 82; *People ex rel. Phœnix* v. *Suprs.*, 1 Hill, 362 ; *People* v. *Suprs.*, 93 N. Y. 404; *People ex rel.* v. *Fairman*, 12 Abb. N. C. 272 ; *People ex rel. Brown* v. *Board of Appt.*, 52 N. Y. 227.)

This court has given construction in *People ex rel. Everett* v. *Bd. Suprs.* (93 N. Y. 397) to this section (1 R. S. 357, § 8), which has been sometimes thought should be construed to establish an absolute town charge in favor of a town officer.   The head note in that case is as follows :   " In order to make a judgment against a commissioner of highways a town charge, it must have been recovered upon a liability incurred by him while acting within the scope of his authority, and in such case the claim *therefor must be presented, passed upon and audited by* the board of town auditors.

Besides section 8 (1 R. S. 357, *supra*), relates to the person in whose favor the judgment against the town officer was

rendered, and to his (the judgment creditor's) remedy to enforce payment of the same. As to *him*, the judgment is made a town charge, and when levied and collected the moneys shall be paid to him.

The claim on account of the judgmen., therefore, is for moneys paid out by the relator as commissioner of highways, and so falls within the very letter of the grant of power to the board of town auditors to audit the accounts of town officers for moneys paid out. (1 R. S. [7th. ed.] 836.)

If these views are correct, then the claims under consideration have been adjudicated by the respondents and there is no occasion for, or propriety in asking for, a *mandamus*, and hence this court is not called upon to examine the legality of the claim, but the relator must pursue the remedy afforded by *certiorari* to review the decision of the board. (*People ex rel. Millard* v. *Chapin*, 104 N. Y. 96.)

This conclusion leads to an affirmance of the judgment, with costs against the relator, and thus harmonizes with the views of all the members of the court at General Term as to two of the bills, and with two of its members as to the third bill.

There is another defense to this proceeding, if the bills have been audited and rejected by the town board upon their merits, and that is, that such audit forms a bar to a reauditing of the bills by the board of town auditors and to the application for a *mandamus* requiring them to do so. (*Osterhoudt* v. *Rigney*, 98 N. Y. 222; *People ex rel. Hotchkiss* v. *Bd. Suprs.*, 65 id. 222; *People ex rel.* v. *City of Kingston*, 101 id. 82–94.)

This court is not called upon to examine the legality of the claim or to express any opinion in respect to the question whether these bills or any of them are a legal charge upon the town of Highlands.

The judgment should be affirmed.

All concur, except Brown, J., dissenting, and Parker, J., not sitting; Bradley, J., concurring in result.

Judgment affirmed.

On motion for reargument the following opinion was handed down:

*Per Curiam.*   The relator was the sole commissioner of highways of the town of Highland from the annual town meeting in March, 1881, to the annual town meeting in March, 1883.   On the Tuesday preceding the annual town meeting boards of town auditors are required to audit the accounts of " *all town officers* who receive or disburse any moneys belonging to their respective towns."   (2 R. S. [8th ed.] 908.)   On the last Thursday preceding the annual meeting of. the board of supervisors, boards of town auditors are required to meet and audit " the accounts of *all charges* and claims payable by their respective towns " and certify all claims allowed to the board of supervisors, which body is required to levy the sums certified upon the taxable property of the town.   (Chap. 305, Laws of 1840 ; 2 R. S. [8th ed.] 907.)

On the last Tuesday, preceding the town meeting of 1882, the board of auditors met, examined the accounts of the relator as commissioner and certified in due form that $128.17 was due him from the town.   Why this claim was not certified to the board of supervisors by the board of town auditors when they met on the last Thursday preceding the annual meeting of the board of supervisors in 1882, does not appear.

When the annual town meeting for 1882 was held there were thirty-three road districts in the town.   A commissioner of highways is required (Chap. 503, Laws of 1880 ; 2 R. S. [8th ed.] 1354), within one week after the annual town meeting to appoint as many overseers of highways as there are road districts in the town, which duty the relator duly performed March 24, 1882.   Charles Hickok was appointed overseer of district No. 3.   On the same day the relator duly assessed the highway labor, made out and certified the lists or warrants for the several road districts, which were delivered to the several overseers as prescribed by the statute.   (2 R. S. [8th ed.] 1358, §§ 24, 25.)   May 1, 1882, the overseers of districts Nos. 12, 18 and 27 resigned, and their resignations were accepted by the relator.   May 3, 1882, he made an order

by which he assumed to abolish districts Nos. 12, 18 and 27 and added the territory embraced within them to district No. 3. The assessment lists or road warrants which had been issued to the overseers of districts Nos. 12, 18 and 27 were returned to the relator, who delivered them to Hickok, the overseer of No. 3, and directed him to execute them. Subsequently, Hickok refused to obey the commands of the relator and enforce the assessments against persons and property in districts Nos. 12, 18 and 27, alleging as his justification that the attempted abolition of those districts and the addition of the territory within them to his district was in violation of the statute authorizing a sole commissioner of highways to divide his town into as many road districts as he shall think convenient by a written order made at least ten days before the annual town meeting. (Sub. 5, § 1; 1 R. S. 501; 2 id. [8th ed.] 1347.) June 28, 1882, the relator began an action against Hickok in a Justice's Court in the town of Highland, alleging as a cause of action that Hickok, by refusing to obey the commands of the relator and enforce the assessments, had incurred the penalties imposed by statute upon overseers who unlawfully refuse to perform their duties. (1 R. S. 504, § 16; 2 id. [8th ed.] 1350.) The action was twice tried, resulting in disagreements of the juries, and was discontinued. A second action was begun in a Justice's Court of the town of Bethel, which was tried and resulted, in August, 1882, in a judgment for the defendant of no cause of action, with costs. The relator appealed to the County Court, demanding a retrial, which was had, resulting, April 28, 1883, in a judgment of no cause of action, with $76.10 costs, which the relator paid November 3, 1883. Assuming that the litigation was proper, the relator necessarily expended $80.15 in conducting it.

On the last Tuesday (February twenty-seventh), preceding the annual town meeting of 1883, the relator presented his accounts for moneys received and disbursed as commissioner for the preceding year to the board of town auditors (but the claims now sought to be recovered were not included therein), and thereupon his account was audited and it was found that

he had received $134.37 more than he had paid out; which sum was adjudged to be due from him to the town. In July, 1883, the supervisor of the town brought an action in a Justice's Court against the relator and his sureties upon his official bond for the recovery of this sum which action the relator settled July 30, 1883, by paying the amount claimed.

On the last Thursday (November 8, 1883), preceding the annual meeting of the board of supervisors in 1883, the relator presented to the board of town auditors his claim audited in 1882 for $128.17; his claim for the judgment paid November 3, 1883, $76.10; amount expended in the litigation against Hickok, $80.15, and demanded that the accounts, with interest, should be allowed him and certified to the board of supervisors, but the claims were all rejected. The relator re-presented the claims to the town board on the last Thursday preceding the annual meeting of the board of supervisors in 1885 and they were again rejected. Thereupon, November 30, 1885, the relator obtained an alternative writ of *mandamus* requiring the board of auditors to certify to the board of supervisors the audit of 1882 ($128.17) and the judgment for $76.10 costs, and to audit the claim for $80.15, or show cause, etc. An issue of fact was joined which was tried at circuit, and at the close of the evidence the writ was dismissed and the exceptions taken were ordered heard at General Term in the first instance. Upon a case made the General Term sustained the ruling at circuit and ordered a judgment for the defendant, with costs, which was entered, and from which the relator appealed.

The appeal must be determined upon the assumption that every disputed question of fact would have been found in favor of the relator.

The $128.27 was expended by the relator without first obtaining the consent of the board of town auditors in the reparation of bridges damaged after the annual town meeting of 1881. The defendants assert that such expenditure being in violation of the statute (Chap. 103, Laws of 1858; 2 R. S.

[8th ed.] 1353), the relator is not entitled to recover the sum of the town. The relator, however, insists that the auditing of the bill by the board was a legal ratification of his act and made his claim upon the town as valid as though the expenditure had been first duly authorized, as provided by the statute cited, and afterwards duly audited. If the relator's position be correct, the fact remains that the board had the power to examine this claim for these unauthorized expenditures and determine whether they were, in fact, made, and if so, were they necessary or reasonable; and it had the right, acting in good faith and within legal rules, to reject the whole or part of the claim for such reason. The relator also insists that the bill having been once audited, the board had no right to reaudit and reject it. The answer to this is that the relator by presenting this claim to the board at its subsequent meetings for audit, submitted his rights to it, and he cannot now successfully assert that the board was without power to re-examine and allow or disallow a claim which he submitted for its determination.

Section 8 of title 5 of chapter 2 of part 1 of the Revised Statutes (1 R. S. 357; 2 id. [8th ed.] 913) and section 1931 of the Code of Civil Procedure do not impose an absolute liability upon towns for all judgments recovered against a sole commissioner of highways in an action prosecuted in his official name. (*People* v. *Bd. of Suprs. of Ulster*, 29 Hun, 185; 93 N. Y. 397.) The board of town auditors had the power to examine and determine whether the action was one which the relator had the right to prosecute in his official character and whether it was carried on in good or bad faith. The board of town auditors had the power, and it was its duty, to examine and allow or disallow, in whole or in part, the claim for $80.15 expended in the litigation, out of which the judgment for costs arose.

In determining whether the town was liable for these claims the board acted judicially, and such action cannot be reviewed or controlled by courts through the writ of *mandamus*, which is an appropriate remedy to compel public officers, judicial as

well as ministerial, to act; and when the act is ministerial the officer may be compelled to perform the act according to law; but officers vested with judicial power which is to be exercised upon a disputed state of facts, or upon facts from which different inferences may be drawn, cannot be compelled by *mandamus* to decide in a particular way. If the record before us showed that the claims sought to be recovered were made by a statute or by some well-settled rule of law, legal charges against the town, charges which the board was bound to allow in whole or in part, then this case would have been within the rule laid down in *People* v. *Supervisors of Delaware* (45 N. Y. 196); *People* v. *Board of Town Auditors of Elmira* (82 id. 80) and kindred cases. But, as we have attempted to show, the relator has failed to establish by the evidence contained in the record the absolute liability of the town for the whole or part of any one of the claims, nor does the evidence present a question of fact which could have been determined so as to establish the liability of the town.

The motion for a reargument should be denied.

All concur, except BROWN, J., not voting, and PARKER, J., not sitting.

Motion denied