DUNN et al v. TOWN OF WHITESTOWN.

(Circuit Court, N. D. New York. January 9, 1911.)

1. Towns (§ 66*)—Mandamus (§ 114*)—Right of Action Against Town—New York Statute.

Town Law N. Y. (Consol. Laws, c. 62) § 260, authorizes the town board of any town to contract for the lighting of the streets, highways, public buildings, etc., of the town, for the payment of the expense thereof, and to establish lighting districts. Section 263 provides that the amount of any such contract shall be assessed, levied, and collected upon the taxable property in said town or district in the same manner and by the same officers as town taxes and be paid over by the supervisor, who is in effect the town treasurer, to the person or company furnishing the light. Section 11 provides that any action to enforce the liability of a town on any contract lawfully made with any of its officers shall be in the name of the town. A town board contracted with a lighting company in the name of the town for the lighting of a district, and levied and collected upon the property of the district the money required to meet the payments under the contract which was paid to the supervisor. Bills for one year's lighting were duly presented, audited, and ordered paid by the town board, but the supervisor who held the fund misappropriated the same resigned and absconded. Held, that the contractor's claim was a liquidated indebtedness of the town, and that its remedy was by an action at law against the town and not by mandamus against its officers to compel the levy and collection of a tax to meet the claim, which was a duty they had already performed.

[Ed. Note.—For other cases, see Towns, Dec. Dig. § 66;* Mandamus, Cent. Dig. §§ 244–246; Dec. Dig. § 114.*]

Towns (§ 62*)—Claims Against—Effect of Allowance by Town Board.

The auditing and allowance of a claim against a town by the town board vested with statutory authority to that end are judicial acts, and are conclusive on the town, so far as the amount and legality of the claim are concerned.

[Ed. Note.—For other cases, see Towns, Dec. Dig. § 62.*]

At Law. Action by George W. Dunn, Charles W. Andrews, and Milton De Lano, receivers of the Hudson River Electric Power Company, against the Town of Whitestown. Judgment for plaintiffs.

Action to recover of the town of Whitestown, Oneida County, N. Y., the sum of $1,260 and interest, the amount concededly due and unpaid to the plaintiffs or the corporation represented by them under the terms of a contract hereafter stated. The defendant denies the liability of the town as such, and denies that an action can be maintained against it, asserting that the remedy of the plaintiffs in this case is by mandamus.

Abram J. Rose and George B. Curtiss, for plaintiffs.
Adrian S. Malsan, for defendant.

RAY, District Judge. Under the provisions of section 260 of chapter 62 of the Consolidated Laws of the state of New York, being part of the laws of said state known as the "Town Law," and which section relates to the "establishment of lighting districts," it is provided as follows:

"Sec. 260. Establishment of Lighting District: It shall be lawful for the town board of any town in this state to contract for the lighting of the streets, avenues, highways, public places and public buildings therein, outside of the corporate limits of any incorporated village in said town, upon such terms and for such time or period, not exceeding ten years, as the town board may deem proper or expedient, and for the payment of the expenses thereof and may establish one or more lamp or lighting districts therein."

Sections 261 and 262 ,provide for the preliminaries to such a contract; that is, the steps necessary to be taken before such a contract may be entered into. For the present I will assume that all the necessary steps were taken, and that the contract mentioned was duly entered into and was valid and binding. Lighting district No. 2 of the town of Whitestown is a small part of such town, and is entirely outside of an incorporated city or village. That district having been duly established, on the 1st day of October, 1906, an agreement or contract in writing signed by Hudson River Electric Power Company by Eugene L. Ashley, president, and attested Elmer J. West, secretary, and on the part of the town or town board as follows: "The Town of Whitestown by B. L. Wrench, Supervisor, Geo. E. Thomas, Clerk"—was entered into by and between the Hudson River Electric Power Company, a domestic corporation of the state of New York, engaged in generating and supplying electricity and electrical power for lighting and other purposes, as party of the first part, and the town of Whitestown, Oneida county, N. Y., as party of the second part, whereby the said corporation undertook and agreed on its part to furnish "to the party of the second part (said town) for the purpose of lighting the streets, highways and public places of lighting district No. 2 in said town" arc lamps, electric arc lamps of the kind, etc., mentioned therein and operate and maintain them from December 15, 1906, to December 15, 1916, so as to give during said time electric arc light of the quality and quantity in said contract mentioned for the purpose of lighting the streets, highways, etc., of said lighting district No. 2 in said town. The said corporation, Hudson River Electric Power Company, and, since it went into the hands of receivers, its said receivers, has in all respects kept and performed all the conditions and obligations of the said contract on its part.

The said contract and agreement further provided:

"The party of the second part (said town) agrees that upon the complete performance by the party of the first part of all the covenants and agreements above mentioned it will pay to the party of the first part for electric arc lighting at the rate of forty-five dollars ($45.00) per light, per year, and for electric incandescent lighting in the public buildings at the rate of eight (.08) cents per kilowatt hour, as measured by the meters installed. Payments for such electric arc and incandescent lighting to the first day of each month to be made upon the receipt of a duly verified account thereof rendered to the town clerk of said town of Whitestown and the lapse of a reasonable time thereafter for examining and auditing the same."

The contract was under seal and duly acknowledged by said corporation, Hudson River Electric Power Company, and annexed was the following affidavit:

"State of New York, County of ...... .—ss.:

"On this second day of October, 1906, before me personally came B. L. Wrench, supervisor, and Geo. E. Thomas, clerk, to me known, who, being by

me duly severally sworn, did each for himself depose and say that he resided in town of Whitestown and is a resident of the town of Whitestown, one of the corporations described in and which executed the foregoing instrument, and that said B. L. Wrench and Geo. E. Thomas constitute the town board of said town: that he knew the seal of said corporation; that the seal affixed to said instrument was such corporate; that it was so affixed by order of the board of trustees of said corporation and that he signed his name thereto by like order.

"W. C. Aldridge, Notary Public, Oneida Co., N. Y. [L. S.]"

This contract, signed "The Town of Whitestown, by B. L. Wrench, Supervisor, and Geo. E. Thomas, Clerk," as seen, purports to be the act of the town as a corporation, and the seal of the town was affixed, and the said Wrench and Thomas made oath that such seal was the seal of the town. The money necessary to pay for the lighting of said district No. 2 of said town for the year 1909 under said contract was duly raised by tax upon the taxable property of said lighting district in the mode and manner provided by law, and was paid over to B. L. Wrench for the purpose of meeting the payments for light under said contract as they became due. Payments for 1907 and 1908 under the contract were duly made; the bills being first audited by the town board. In 1909 the work was performed, the light furnished and accepted, and the bills therefor presented monthly and duly audited at the end of each six months, but two audits of bills for $630 each, covering the year 1909, in all $1,260, were not paid by said Wrench, the supervisor, or by any one; said supervisor having absconded with the money or having misappropriated it before absconding. These audited bills to that amount have not been paid. The audit for the first six months was made by the town board August 2, 1909, and for the last or succeeding six months was made April 4, 1910. At the meeting of the town board held August 2, 1909, the following took place:

"On motion of Mr. Bielley. Mr. Wrench was ordered and directed to pay the indebtedness of lighting district No. 2, for lights for the six months, amounting to $630.00."

At the meeting of the town board held April 4, 1910, the following took place:

"On motion the following bills of the Hudson River Electric Power Company for the months of July, August, September, October, November, and December, 1909, were audited for their full amount, and the supervisor was authorized to pay the same as soon as he had the funds."

The money to pay for lighting that district during those months had already been raised by tax and paid to Wrench, the supervisor, and he had then absconded. Wrench resigned as supervisor in September, 1909, and Mr. George H. Graham was at once appointed supervisor of said town to fill the vacancy. Mr. Graham was then elected to the office in November, 1909. He qualified and has acted since his appointment. As Wrench absconded with or misappropriated the funds in his hands raised to pay these bills for 1909, he did not pay same over to his successor Graham, and, so far as appears, no money has been collected or raised by tax from any source to take their place. It follows that there is no affirmative evidence that Graham, as su-

pervisor, or the town board, has had, or has, funds to pay these particular bills. The plaintiffs continued to furnish light under the contract during all of 1910 and the town authorities raised the money by tax on the property in said district No. 2 to pay same, but did not and has not again raised money to pay the said bills for the year 1909. The plaintiffs have more than once called on the supervisor to pay. He admits the amount due, but in November, 1909, said, in substance, that the bonding company which bonded Wrench denies liability in part for his defalcation and the town cannot pay from that source, and that the only other way would be to call a special meeting for bonding the town, and that the "town board does not deem it proper or feasible to call a town meeting at this time." December 27, 1909, the supervisor said, in substance, that the plaintiffs would have to resort to the methods pointed out in the town law "in order that the town board will be in position to raise the money to pay your claim which we are willing to do." It is quite clear that the position of the town board was that the plaintiffs would have to resort to mandamus to compel the levy and collection of a tax to pay their claim for the year 1909 lighting. The plaintiffs did not resort to mandamus or sue Wrench, but about April 25, 1910, brought this action.

As to the amount due from January 1, to July 1, 1909, and audited August 2, 1909, the money had been collected by tax and placed in the hands of Wrench, but he misappropriated it, and resigned and absconded in September of that year. As to the amount due from July 1, to January 1, 1910, and audited April 4, 1910, the money had been collected by tax and paid to Supervisor Wrench early in 1909, but he misappropriated that also, and absconded before the bills had been incurred, all of them, and before they were audited by the town board. Graham and the town board have done nothing, so far as appears, to raise the money or collect the money and pay the plaintiffs. The money having been once collected by the town authorities from the taxpayers of lighting district No. 2, and paid over to the supervisor of the town to meet the contract made by the town board, it would seem that the taxpayers of that district ought not to be called upon to make good his defalcation.

By chapter 62 of the Consolidated Laws (chapter 63, Laws of 1909, § 2, art. 1), known as the "Town Law," it is declared that:

"A town is a municipal corporation comprising the inhabitants within its boundaries and formed for the purpose of exercising such powers and discharging such duties of local government and administration of public affairs as have been or may be conferred or imposed upon it by law."

Section 10 of article 2, "General Provisions," says that:

"All contracts made by town officers for and in behalf of their towns shall be in the name of the town. When such contracts are otherwise lawfully made they shall be deemed the contracts of the town notwithstanding it is omitted to be stated therein that they are in the name of the town."

It follows that the town of Whitestown was and is a municipal corporation capable of making contracts and incurring obligations in exercising the powers and discharging the duties of local government and in the administration of public affairs conferred or imposed upon it by law. By section 11 of article 2 it is provided that:

"Any action or special proceeding for the benefit of a town upon a contract lawfully made with any of its town officers, or to enforce any liability created or duty enjoined upon those officers, or the town represented by them, or to recover any penalty or forfeiture given to such officers, or the town represented by them or to recover damages for injury to the property or rights of such officers, or the town represented by them, shall be in the name of the town. Any action or special proceeding to enforce the liability of the town upon any such contract, or for any liability of the town for any act or omission of its town officers, shall be in the name of the town."

It is clearly contemplated that a town may sue or be sued upon its contracts lawfully made by its town officers. If made for the benefit of the town and its protection and authorized by law, the town may sue or be sued on such contract, provided it was made by the town officers for and in behalf of the town. That lighting the streets and avenues of a town and its public buildings or any part of them is for the benefit of the town and its protection and the protection of its inhabitants cannot be denied with reason. It is not necessary that the light be carried into every street and highway or into every public building.

Now, section 260 of article 12 says that:

It "shall be lawful for the town board of any town in this state (and the town board is made up of town officers) to contract for the lighting of the streets, avenues, highways, public places and public buildings therein * * * upon such terms and for such time or period, not exceeding ten years, as the town board may deem proper or expedient, and for the payment of the expenses thereof and may establish one or more lamp or lighting districts therein."

## Section 263 of article 12 says:

"The amount of any contract that may be entered into pursuant to the provisions of this article shall be assessed, levied and collected upon the taxable property in said town or district in the same manner, at the same time, and by the same officers as the town taxes, charges or expenses of said town are now assessed. levied and collected, and shall be paid over by the supervisor to the corporation, company, person or persons furnishing or supplying said light."

This, of course, contemplates the payment of such moneys when collected by the collector to the supervisor as is made his duty by other provisions of law. Unless it be true that "the town board" of a town is not "town officers"—that is, that a contract made by "the town board" and expressly authorized by law for lighting the public streets of the town is not a contract made by the "town officers" for and in behalf of the town within the meaning of the statute—it seems to me very clear and beyond all controversy that, when such a lighting contract is made by the town board for the lighting of a duly established lighting district of the town and the light is furnished, the obligation is imposed upon the town to pay according to the terms of such contract (assuming them to be lawful), and that a failure so to do exposes the town to an action on the contract as one to "enforce the liability of the town upon such contract." This contract was made in the name of the town and as one made by officers of the town authorized to make it, not by and in the name of the "Town Board of the Town of Whitestown." It is the contract either of the town or of the town board. If

it is the contract of the town then the town is liable. If of the town board, then that body must be proceeded against. And what remedy would the plaintiffs have? Can the town board be compelled to assess, levy, and collect another tax on lighting district No. 2? Or one on the entire town? Its function in this regard has been performed, it seems to me, and its power exhausted. The money went into the hands of the supervisor, a town officer under a bond to faithfully account, etc. Is the town board liable on its contract to these plaintiffs? Can that board collect of the supervisor or of his sureties?

I am cited by the defendant to Holroyd et al. v. Town of Indian Lake, 180 N. Y. 318, 73 N. E. 36; Acme Road Machinery Co. v. Town of Bridgewater, 185 N. Y. 1, 77 N. E. 879; Bragg v. Town of Victor, 84 App. Div. 83, 82 N. Y. Supp. 212; Peck v. Town of Catskill, 119 App. Div. 752, 104 N. Y. Supp. 540, as authority for the proposition that the plaintiffs cannot maintain this action against the town. It is well to remark in the beginning that there is a difference between liquidated, audited claims against a town and those which are unliquidated, not audited, and also a difference between claims against a town on its contracts and those given by statute such as claims for compensation to officers for salaries, etc. And where a claim against a town has been duly audited and allowed, and the sum due fixed by the proper auditing board or officer, and the tax to pay same has been duly assessed, levied, collected, and placed in the hands of the proper disbursing officer, the quasi treasurer of the town, under bond to the town for the proper discharge of his duties and the proper payment of the moneys so raised and intrusted to him to pay the liabilities of the town, and such officer squanders or misappropriates the fund, it has been held, with sense and reason, that the town is liable in an action against it, and may look to the defaulter for reimbursement, or raise the amount necessary to pay the judgment by tax. These plaintiffs have no claim or claims to be audited or allowed. They have been presented in proper form and audited by the proper officers. No tax is to be assessed, levied, and collected to pay these claims as such. That has been done. It was done concededly pursuant to the statute (section 263, art. 12, c. 62, Consolidated Laws), in the same manner, at the same time, and by the same officers as the town taxes, charges, and expenses of said town, etc., and was paid over to the supervisor, Wrench, to be paid to the plaintiffs as the payments under the contract became due and payable. The supervisor has absconded with the money or misapplied it.

In Federgreen v. Town of Fallsburgh, 25 Hun, 152, the town had issued its bonds and the money to pay the coupons when due had been raised by tax and placed in the hands of the Railroad Commissioners, the persons authorized to receive and disburse the money, and such commissioners misappropriated the money. The town was held liable in an action. In Marsh v. Town of Little Valley, 64 N. Y. 112, the town had issued certain bonds which became due, but the town had not provided means to pay same and the town was sued. It was a contract to pay. It was claimed that the remedy was by mandamus to compel the raising of money to pay same. This contention was denied. The court said:

"The bonds being issued as the law requires, the town is obligated to provide means for the payment of same. And the several amounts thereby secured are not in the nature of unliquidated demands which are required to be audited and allowed by the board of town auditors, and which these officers are authorized by law to adjust and settle. As each of the bonds upon its face is an admitted debt against the town which it is liable to pay, the question arises whether an action will lie to recover the amount or some other remedy must be adopted for that purpose."

The court then goes on to show, citing cases, that, being an admitted established debt, it was the duty of the town to provide means of payment, and, not having done so, an action would lie.

Here the debt is admitted, and it is the debt of the town, audited and allowed and past due. It was the duty of the town to provide means of payment, to pay its debt, and, not having done so, the money having been once raised by tax and placed in the hands of the proper officer and by him misappropriated, the town is liable in an action. It is like the case of Federgreen v. Town of Fallsburgh, supra. In Bennett v. Town of Ogden, 81 App. Div. 455, 81 N. Y. Supp. 56, one Slayton had a valid claim against the town of Ogden which was duly audited at the full amount included in the tax levy and collected and paid over to the supervisor of the town. Slayton had assigned a part of his claim to one Sawens, but a few days later assigned the whole of it to Lace and Tierney for full value. A few days thereafter Sawens assigned to one Bennett, and all three, Bennett, Lace, and Tierney, notified the town of their respective assignments. The supervisor, by authority of the town board paid the money, all of it, to Slayton for Lace and Tierney; Slayton indemnifying the town. Bennett sued the town and the supervisor, but the supervisor died and the action was continued against the town alone and recovery had. This was sustained; Williams, Adams, Spring, Hiscock, and Nash concurring. The court said:

"Under these circumstances, we think the town was liable to the plaintiff for the moneys and that this action could be maintained. The money had been raised by the town and placed in the hands of its supervisor who by statute was made its legal custodian as its agent or quasi treasurer. He had given security to protect the town for any misappropriation of its moneys. The $171.60 °(Bennett's claim) was an indebtedness by the town to plaintiff allowed and liquidated. Until such debt was actually paid to the plaintiff, the town remained liable therefor, and an action could be maintained to enforce such liability."

The only difference between that case and this is that there the supervisor paid the money to the wrong parties, while here he absconded with them, and there there was no express contract in the name of the town while here there is. The money to pay that audited claim having been once collected by tax and paid to the legal custodian of the town's moneys (as here) to be held for and paid to the person entitled thereto (as here), the court did not entertain a suggestion that Bennett's remedy was by mandamus to compel another tax levy. In Colby v. Town of Day, 75 App. Div. 211, 77 N. Y. Supp. 1022, the action was against the town to recover damages for the breach of a contract made by the town board of said town, and which had been legalized by an act of the Legislature. The claim was presented to the town board for

audit before the contract was legalized and by it ignored, **not acted** upon. After the contract was legalized, the claim was not presented for audit at all, but suit was brought against the town. It is quite clear that, where a claim against a town is a fixed statutory liability, a suit may be maintained against the town, that other claims, even on contracts made by town officers and authorized by statute, must be audited, and the money raised by tax before an action will lie against the town in any case. See, also, Myers v. Barnes, 114 N. Y. 317, 20 N. E. 609, 21 N. E. 739. If the claim has been audited and the money raised and placed in the hands of the proper custodian and disbursing officer and it appears that he has it in his possession, then such officer may be compelled to pay same over by action against him or otherwise. But when the claim has been duly audited and allowed by the town board or auditing board, and the money to pay same duly assessed, levied, and raised by tax and paid to the town officer authorized to receive and disburse same to the parties entitled thereto, and he misappropriates same or absconds therewith, then the town becomes liable to an action therefor. Certiorari is of no avail, as the town board has done its duty by auditing and allowing the claim. Mandamus to compel the supervisor to pay over will not lie as the present supervisor has never had the money. Mandamus against the town or town board to compel the raising of a tax to pay the audited claim would not lie, as the tax for that purpose has been once assessed, levied, and collected and paid to the proper disbursing officer.

Holroyd v. Town of Indian Lake, 180 N. Y. 318, 322, 323, 73 N. E. 36, is quite in accord with these views and the cases cited in their support. That case arose under what are now sections 281 to 298 of article 13 of the Consolidated Laws, before mentioned. By section 281, the town board may establish "water supply districts" and contract for a supply of water which is to be a charge on the whole town, etc. By section 282 the town board may establish a "water district." When duly established, three water commissioners for such "water district" are to be appointed pursuant to section 285. By section 287 such commissioners may contract for the construction of a water system for such water district. They are to certify to the town board the amount of money required for the construction of such system, and it is made the duty of such board to raise such money by the issue and sale of bonds. Section 288 provides for the mode and manner of issuing these bonds, and provides that "the bonds shall be a charge upon the town and shall be collected from the property within the water district."

As was held in Holroyd v. Town of Indian Lake, supra, page 323 of 180 N. Y., 73 N. E. 36, the money derived from the sale of the bonds is to be paid to the commissioners, and they are charged with the duty of erecting the plant and of managing it thereafter. The town lends its credit to the water district, and has a lien upon the taxable property of the district with power to enforce it by taxation in the usual way. And said the court:

"The town is not responsible for the acts of the water district which it creates any more than the state is liable for the action of the town which it creates."

And on pages 322, 323, of 180 N. Y., on pages 37, 38, of 73 N. E., the court said:

"The contract in question was not made by the town or by its officers or for its benefit. It was made by the water commissioners of a water district, who are not town officers proper, such as are named in the town law. Their powers are limited to the construction and management of a water plant for the exclusive benefit of the water district. They do not act for the town, and no action on their part can make the town liable. The statute, however, lends the credit of the town to the water district in order to raise money to pay for the water plant, but the bonds issued by the town for that purpose, although its obligations, are not paid by it, but by taxes levied upon the property of the district through the board of supervisors. The statute requires the water commissioners, after they have made a contract for the construction of the plant, to notify the town board of the amount required to discharge the obligation. It then becomes the duty of the town board to issue bonds and raise the sum needed, but the statute does not authorize the town board, or any town officer, to expend the money. The town board raises the amount needed to meet the contracts made by the water commissioners, who are required to give an undertaking running to the town in such sum and with such sureties as the town board shall direct. New undertakings with larger penalties may be required from time to time as they become necessary."

The town is indemnified by the commissioners for the amount raised by bonding the town. Now, suppose the town had been sued upon one or more of the bonds issued by it under this statute by its officers instead of for damages by reason of a breach of the contract made by the water commissioners, not officers of the town, can there be any question that an action would lie? Not if the prior decisions of the Court of Appeals are good law. But that is a different proposition by far than making the town liable for a breach of contract for the construction of such a plant committed by the commissioners who made the contract, not in the name of the town, however, which they had no authority to do, not being town officers. As the Court of Appeals said:

"The town has no authority to build the plant, which is wholly beyond its jurisdiction and control. It has no right to use it, or regulate it, or collect the rents."

With the supplying of a lighting district in a town with light it is far different. The town board, officers of the town, the supervisor of the town, town clerk, and two justices of the peace of the town, if it has them, constitute the town board, makes the contract and executes it by causing the money to be raised by taxation and paying it to the supervisor of the town to be paid by him to the party entitled when the bills are audited. The supervisor gives a bond of indemnity to the town, not to the one supplying the light. All the inhabitants of the town who pass that way enjoy the light which serves by lighting the highways and public buildings of the town to avert accidents and injuries to travelers and protect the town against liability, etc. Like street lighting in any village or city, it is for the benefit of the entire municipality, even though confined to certain selected and designated streets or districts. In the case at bar the town or town board is not the fiscal agent of the lighting district acting for it, but is the agency of the town in making the contract. The town board of the town makes the contract, collects the money by tax

185 F.—38

on the property in the district; true, but then pays it over to the supervisor of the town, not of the "lighting district," and thereafter audits the bills for services performed under the contract, and the supervisor is to pay them. The town board of a town is its governing board (General Municipal Law of N. Y. [Laws 1892, c. 685] § 1; Town of Hempstead v. Lawrence, 138 App. Div. 473, 476, 122 N. Y. Supp. 1037), and, of course, acted for the town in making this contract, not for a lighting district in the town.

Suppose the Hudson River Electric Power Company had broken this contract, and refused to perform same to the damage of the people in the lighting district only, a part of the town, can there be any question that the town of Whitestown could maintain an action against such corporation for the breach? In the Holroyd v. Town of Indian Lake Case, supra, it is plain that the action for breach of contract would be against the commissioners of the "water district." In Acme Road Machinery Co. v. Town of Bridgewater, 185 N. Y. 1, 77 N. E. 879, it was held that a town cannot be sued in an action at law for the price of a road machine purchased by its commissioners of highways with the assent of the town board as the law expressly requires the machine, if purchased, to be paid for with money appropriated for highway purposes whereby is excluded any power on the part the commissioner or of the board to impose a debt therefor on the town. If a person sells a road machine to a commissioner of highways in a town on credit, he gives credit to such commissioner, not the town, and takes his chances of money being appropriated for the purpose by the town so far as getting pay from the town itself is concerned. See, also, Matter of Niland v. Bonron, 193 N. Y. 180, 183, 184, 85 N. E. 1012.

That case is in no way similar to one where the town board is expressly authorized by statute to make a contract to light the highways of a town or a part of them, incur a liability, raise the money by tax to pay same, and place it in the hands of the supervisor of the town for the purpose of meeting the obligation when due. In this road machine case, supra, the court said:

"It reads: 'The commissioner or commissioners of highways may, * * * with the approval of the town board, purchase and hold for the use of the town at large, one or more road machines, and pay for the same with money appropriated and set apart for highway purposes.' This provision expressly excludes any power on the part of the highway commissioner to impose a debt on the town, for he is required to pay for the machine with money appropriated for highway purposes. If the highway moneys were insufficient to purchase a road machine, then, necessarily, the purchase was unauthorized. If they were sufficient, then the commissioner was bound to pay out of the money in his possession or under his control. If he failed to do so, he was personally liable on his contract."

It seems plain that one who contracts with a single town officer is presumed to look to and know his authority, and that, if he gives him credit, he must look to him personally. This case would have been very different if the law had authorized the commissioner to purchase on credit and execute a contract to pay at a future date and perhaps in installments, and had provided that the money to pay same

should be raised by tax and paid to the supervisor of the town to meet the contract.

It is quite evident that the establishment of a lighting district is for the convenience and benefit of the town. Outside of cities and villages and even in them, it may be desirable and even necessary to have many lights and expensive lights in one section of the town and a few inexpensive lights in another. Evidently it was desirable to make the section having the more numerous and expensive lights pay more than the section or sections having the fewer and less expensive lights, or none at all. It was not the purpose to make this lighting of the highways, etc., of a town, or of a part thereof anything but a transaction of the town itself and one for its benefit. The division of a town into "water districts" or the establishment of a "water district" in a town with commissioners appointed to manage and control such district and contract in their own names for the construction of a water plant therein for the supply of water to the inhabitants of such district only, and to control same and rent water and collect rents, etc., such commissioners having power to pay for the construction of such plant with money borrowed of the town and raised on the credit or bonds of the whole town, is quite a different matter from the establishment of such a lighting district as this and the making of a contract by the town board of the town, etc.

Section 100 of article 5 of the town law above referred to provides:

"Sec. 100. Supervisor's undertaking. Every supervisor hereafter elected or appointed shall, within thirty days after entering upon his office, make and deliver to the town clerk of the town his undertaking, with such sureties as the town board shall prescribe, to the effect that he will well and faithfully discharge his official duties as such supervisor, and that he will well and truly keep, pay over and account for all moneys and property, including the local school fund, if any, belonging to his town and coming into his hands as such supervisor; and such undertaking shall, after its execution, be presented to the town board for their approval as to its form, and the sufficiency of the sureties therein, and until the same shall be so approved, none of the moneys, books, documents, papers or property of the town shall be turned over or delivered to such supervisor elect."

Can there be any doubt that the money raised by the town by taxation on the property of a lighting district to meet the payments falling due under a contract made by the town board of the town for lighting such a district and by law required to be paid to such supervisor to meet such payments comes within the description of "all moneys and property, including the local school fund, if any, belonging to his town and coming into his hands as such supervisor"? And is it not one of his official duties to "well and truly keep, pay over," and account for such moneys? Is it not clearly contemplated that the town is to make the contract, that the town is to collect the money to meet it by taxation in the district, and deliver it to its supervisor to be by him used to satisfy the contract of the town, and that such money when so collected is the money of the town? By section 98 (same laws) the supervisor is to receive and pay over all moneys raised therein (in the town) for defraying town charges, except those raised for the support of the poor, keep a just and true account of the receipts and expenditures of all moneys which shall come into his hands

by virtue of his office, and account with the justices of the peace and town clerk for the disbursement of all moneys received by him, etc.,

I think the following propositions clear, viz.:

(1) This was a contract of the town duly made and valid.

(2) The money to meet the payments coming due for light furnished during the year 1909 according to its terms was duly raised by tax on the property of the lighting district mentioned therein, and was legally raised and paid to the supervisor of the town as required by law to be applied by him to the payment of bills for light furnished thereunder, and that such money so raised and paid to the supervisor became the money of the town in his hands.

(3) The Hudson River Electric Power Company by its receivers duly appointed by this court and duly authorized to conduct and carry on the business of such corporation and execute and perform its contracts in so doing and under the authority of this court has duly in all things performed said contract and furnished light, etc., as they are required during the whole of the year 1909.

(4) That on the 2d day of August, 1909, the bills for such light so furnished having been duly presented in due course to the duly constituted auditing board of the said town for the months of January to June, 1909, inclusive, and, being due, they were duly audited and allowed at the sum of $630, and thereupon became a fixed and liquidated liability of the town payable from the said money so raised and in the hands of the said supervisor of said town, B. L. Wrench, and it was his duty thereupon as an officer of the town to pay said sum to said receivers.

(5) That said supervisor neglected and failed to pay over said moneys, said sum of $630, to said receivers, but misappropriated and converted such money to his own use.

(6) That thereafter, and in September, 1909, the said Wrench having resigned his office at about that time, one Geo. H. Graham was duly appointed supervisor of said town and qualified as such, and was thereafter duly elected to such office and duly qualified, and has since continued to be the supervisor of said town.

(7) That on the 4th day of April, 1910, the bills for such light, so furnished during the months from July, 1909, to December 31, 1909, same being due and payable under said contract and having been duly presented in due course to the duly constituted auditing board of said town, were duly audited and allowed at the sum of $630, and thereupon became a fixed and liquidated liability of the town payable from the said money so raised and paid into the hands of said supervisor of said town, said B. L. Wrench.

(8) That said supervisor, B. L. Wrench, neglected and failed to pay over to his successor, said George H. Graham, said sum of $630 so collected and placed in his hands to meet such payments under said contract for said months of July to December, 1909, both inclusive, and did not pay same to the said receivers, but misappropriated and converted such money to his own use.

(9) That neither said town nor said Graham as the successor of said Wrench or otherwise has collected such moneys from the said

Wrench or his sureties, or from any other source, and they have not raised the money to pay said amounts so due said receivers under said contract and audited and allowed as aforesaid, and said bills at the time of the commencement of this action had not been paid nor had any part of same.

(10) The town by its supervisor and town board has not denied its liability for said sums so audited and allowed by the town board, but has not raised the money to pay same or in any way provided for their payment since the defalcation of supervisor Wrench.

In view of the decisions to which attention has been called and of the provisions of the town law of the state of New York, I am of the opinion and hold that a resort to mandamus would not be the proper remedy, that mandamus proceedings cannot be maintained, and that the town is liable in an action at law. The audit and allowance of these bills by the town board or auditing board of the town, so far as such bills were concerned, and so far as their amount and legality was or is concerned, were and are conclusive on the town. Such audits were judicial acts and final and conclusive. In the audit and allowance of claims the board acts judicially and its actions cannot be reviewed and controlled through a writ of mandamus; only by certiorari. People ex rel. Myers v. Barnes, 114 N. Y. 317, 20 N. E. 609, 21 N. E. 739. This having been done and the money having been properly raised by tax and placed in the hands of the proper officer of the town, its supervisor and fiscal agent, for payment to the plaintiffs, the town, not the plaintiffs, is responsible for his acts of misfeasance in regard thereto. I am not able to find any provision of law, and am not pointed to any which would enable these plaintiffs to mandamus the town as such, the town board its governing board, or any of its officers. When a judgment is rendered and the liability of the town fixed growing out of all the facts stated, including the defalcation named, if the money is not raised to pay, possibly and probably mandamus will lie to compel action. But the plaintiffs are under no obligation to present a new claim against the town board based on the former action, and the collection of the tax, and the defalcation of the supervisor, Wrench, and nonpayment of the audited bills and failure to provide money for their payment and demand a new audit of this claim or of these claims under present conditions. They stand as audited, fixed, liquidated liabilities of the town, as much so as bonds or any other class of fixed statutory liabilities. They have become fixed by compliance with all statutory requirements, and are on the same basis as the class of town liabilities referred to.

There will be appropriate findings of fact, etc., and a judgment for the plaintiffs for the amount claimed.